EDWARD B. PURCELL, plaintiff in error, vs. THE SOUTHERN EXPRESS COMPANY, defendant in error.

| 34 | 315 |
|---|---|
| 90 | 499 |
| 34 | 315 |
| 93 | 808 |
| 34 | 315 |
| 95 | 452 |
| 34 | 315 |
| 110 | 663 |
| 34 | 315 |
| 124 | 325 |

[1.] Parol evidence is admissible to show a special contract between a shipper and a common carrier, notwithstanding the carrier's clerk had given a receipt, specifying the terms on which the freight was received.

[2.] A receipt given for goods delivered to be shipped is only *prima facie* evidence, not conclusive, and parol evidence is admissible to show that the receipt does not contain the agreement of the parties.

[3.] Where a shipper agrees to accompany his cotton to be shipped by railroad, to guard against fire, and fails to do so, the carrier may take the cotton in his absence, or abandon the contract at his option.

[4.] A common carrier cannot, by special contract, exempt himself from liability for loss occasioned by his own negligence.

[5.] Where a common carrier receives freight for transportation, and fails to deliver it, the burden of proof is upon him to show that he is not liable to respond in damages for it.

[6.] When a carrier leaves a car load of cotton at an intermediate station, on a side track, within ten feet of the main track, in danger of fire from sparks from passing engines, and without a guard, this is evidence of gross negligence, and, unexplained, will make the carrier liable for all losses occasioned by such negligence.

[7.] The notice required by the Act of 1863 to define the liabilities of common carriers, etc., is public notice.

Complaint. In Richmond Superior Court. Tried before Judge HOOK. October Term, 1865.

This was an action by Purcell against the Express Company, as a common carrier between Augusta, Ga., and Wilmington, N. C., for damages for failure to carry safely, and deliver at the latter point, thirty-three bales of cotton.

The plaintiff's evidence was, in substance, as follows :

*Doughty*—Proved the weight and quality of the cotton, and its value at Augusta.

*Kiddell*—Proved the price of cotton at Wilmington.

*J. B. Wilson*—Proved his agency for the defendant and the signing of a receipt by him as such. He testified, on cross-examination, that he did not receive the cotton himself, but made out the receipt from data furnished by the tally-book kept at the railroad by the clerk of defendant; that he knew nothing of the contract or the cotton, or whether the defendant charged the usual rates or not.

The receipt mentioned by the witness was read in evidence. Here is a copy of it:

"SOUTHERN EXPRESS COMPANY,
AUGUSTA, May 9th, 1864.

Received of E. B. Purcell thirty-three bales of cotton, valued at        dollars, and for which amount the charges are made by said company, marked R. R., for James Mullen, Wilmington, N. C.

Which, it is mutually agreed, is to be forward to our agency nearest, or most convenient, to destination only, and then delivered to other parties to complete transportation.

It is further agreed, and is part of the consideration of this contract, that the Southern Express Company is not to be held liable, or responsible, for the property herein mentioned, for any loss or damage arising from damages of railroad, ocean, steam, or river navigation, leakage, fire, or from any cause whatever, except the same be proved to have occurred through the fraud or gross negligence of its agents or servants, unless specially insured by it, and so specified in this receipt; which insurance shall constitute the limit of the liability of the Southern Express Company in any event; and if the value of the property above described is not stated by the shipper at time of shipment, and specified in this receipt, the holder hereof will not demand of the Southern Express Company a sum exceeding fifty dollars for the loss or detention of, or damage to, each package herein receipted for. Nor shall said company be held responsible for the safety of said property after its arrival at its place of destination. * * (All articles of glass or liquids will be taken at shipper's risk only, and the shipper agrees that the company shall not be held responsible for any injury or loss by breakage, leakage, or otherwise.)

For the Company,

Freight $1158.50. Paid.                    J. B. WILSON."

*Damiste*—Was, on the 9th of May, 1864, the conductor in

charge of a freight train on the South Carolina Railroad. The cotton carried that day was on a flat car, which had no protection against fire.   No special messenger with it, or other person to protect it, except the hands on the train— no buckets only those belonging to the train.   Witness left the car at Branchville on a side track.   It was in danger of being burned by sparks from passing engines : the tracks were about ten feet apart.   Witness don't know the fate of the cotton ; but a car of cotton was burned "upon that side" about that time.   There was a railroad watchman at Branch- ville.   The railroad received cotton, at times, on platform cars.

*Cole*—Superintendent of the Georgia Railroad—testified that he had been superintendent of Railroads for seven years, and that the rule of railroads requires very great care in loading cotton ; that it is usually placed in box cars ; that when on open platform cars, buckets of water should be carried along to extinguish fire ; that when left at stations, it should be under guard ; and that when left on side lines it is in danger of fire from passing trains.

The defendant's evidence was, substantially, as follows :

*Sylvester*—Was an employee of defendant, and had been for seven or eight years.   Defendant had no box cars in May 1864, and leased none—had two open platform cars. About 9th of May 1864, plaintiff had a load of cotton brought on one of these cars to the South Carolina Railroad, from direction of the Georgia Railroad.   Witness was sent to Marly, Superintendent of the South Carolina Railroad, to see if he would take it.   He refused, unless defendant would send it on one of these cars, covered with a tarpaulin, and with it a man with buckets to extinguish fire.   Witness told this to defendant's superintendant, in presence of plaintiff and James Mullin.   Plaintiff and Mullin agreed that the latter should go along, and comply with Marly's terms.   He did not go, however, until the next morning after the train left with the cotton.

Defendant was to receive only half the usual freight ; took

the cotton as an act of accommodation to plaintiff, he being a railroad man. He gave his due bill for the freight, and has never paid it. Witness thinks war existed at the time—does not know the fact—was not there. Cotton was received at that time only on condition of being at shipper's risk. Defendant had never published to that effect that witness knows of. He don't know that defendant refused to carry cotton except under certain restrictions, or received goods from some and not from others. Preference was never given. Witness was told by an employee of the defendant that the cotton was burned. The remains of the car came back: witness saw them.

Defendant sometimes refused to receive particular sorts of goods, considered especially hazardous, without writing on the receipt "At shipper's risk." This indorsement was required only as to goods extra hazardous.

The jury returned a verdict for the defendant; and the plaintiff moved for a new trial on the following grounds:

1. Because the Court permitted the witness, J. B. Wilson, to testifiy "that the written rceipt given by him, for the plaintiff's cotton, was made from entries on the tally-book, used by defendant in shipping cotton, and that he did not receive the cotton described therein." Counsel for the plaintiff objecting.

2. Because the Court permitted the witness, —— Sylvester, to testify that he was present at a conversation between the plaintiff and the managers of the defenfendant, wherein the plaintiff agreed to take the risk of shipment of the cotton on an open car, and to cover the same with a tarpaulin, and send a man along with buckets of water to put out fire;" counsel for plaintiff objecting, and insisting that the same varied and contradicted the written receipt given to the plaintiff at the time.

3. Because the Court refused to charge the jury, as requested by plaintiff's counsel, that "to prove an express contract, it must appear that the same was fully complied with by both parties, and if the shipper fails—neglects his portion—

the carrier has no right to remove the goods, without first giving him notice;" but qualified the same, stating that this would be to make the carrier responsible for the neglect of another not under his control.

4. Because the Court refused to charge the jury, as requested by the plaintiff's counsel, that, " if it appears that any unusual restriction was imposed upon the plaintiff, and that he could not get his goods shipped, except under those restrictions, that the same, under the law of this State, is utterly void, and the carrier is still liable;" but qualified the same, by stating that the carrier was liable, provided these restrictions were imposed after notice, as required by the Act of the General Assembly of 1863.

5. Because the Court charged the jury, as requested by defendant's counsel, "that the receipt of the clerk in this case does not alter the right of the parties under the special agreement, if a special agreement be shown.

6. Because the Court charged the jury, upon their return into Court for instructions, that the Act of the General Assembly, of April 18th, 1863, required public notice to be given by the carrier."

7. Because the Court, on the return of the jury for instructions, charged, "that the neglect of one party to a special contract with a common carrier to perform his portion of his contract, does not discharge the carrier, who must, nevertheless, proceed to transport the goods to the place of destination."

8. Because the verdict of the jury was contrary to the law and evidence.

The Court refused a new trial; and this is complained of as error.

MILLER, for plaintiff in error.

GOULD, for defendant.
WALKER, J.

[1.] "A common carrier cannot limit his legal liability by any notice given, either by publication or by entry on receipts given or tickets sold. He may make an express contract, and then will be governed thereby." *Code, Sec.* 2041. If a common carrier may make an express contract, certainly he will be allowed to prove it; and, as he would not be allowed to limit his liability by an entry on a receipt given, so, of course, he will be permitted to prove it by *aliunde* testimony. Evidence, then, aside from the receipt, was most clearly admissible to prove an express contract. In this case, we think the express contract was satisfactorily proved, and was a contract outside of anything contained in the receipt. The receipt was given by a clerk who knew nothing of the express contract, nor of the terms upon which the cotton was received. It certainly would be a great hardship upon defendant, to hold that a receipt given under such circumstances, is *conclusive*, and that no testimony shall be admitted to show, either a special contract or the circumstances under which the receipt was given. Such, we apprehend, is not the law.

[2.] A receipt, acknowledging the delivery of the goods, etc., is merely *prima facia* evidence of the fact, and not conclusive. 1 *Greenl. Ev.* 305. We understand it always to be admissible to prove, by parol, such facts as will show that the written instrument never had any legal existence or binding force; that it was given under such circumstances that it fails to contain the evidence of the contract entered into between the parties; this is done, not for the purpose of altering its terms, but to show that it does not contain the agreement of the parties. From this it follows that we think the Court did not err in admitting the testimony of Wilson and Sylvester.

[3.] Nor do we think the Court erred in refusing to charge, as set out in the third ground of the motion for a new trial. The agreement between plaintiff and defendant was, that defendant would ship the cotton on a platform car, and Mullen was to throw a tarpaulin over the cotton,

and go along, with buckets of water, to put out fires. Defendant proceeded to carry out it's portion of the agreement, but Mullen, the agent of plaintiff, failed to carry out his; and plaintiff insists that, because of his failure, defendant was bound to abandon the contract; or, at any rate, must give notice to plaintiff before proceeding to carry it out. We are not aware of any legal principle which requires any such thing. It was the duty of the parties, respectively, to perform their several obligations, at the proper time. Railroads have their schedule times for running their trains, and it is the duty of persons having business to be transacted by them, to be on hand at the proper time. The road was not bound to await the plaintiff's convenience, in the absence of contract, but was authorized to proceed to carry the cotton, if it saw proper to do so. It is true, the road might have declined to take the cotton at all, upon plaintiff's failure to comply with the part of his agreement, but was not bound to do so. The defendant saw proper, in the absence of the agent of plaintiff, and without the agreed precautions against fire, to undertake to carry the cotton; and the question here is, did it, under the circumstances, use ordinary care and diligence,—such care as the law requires.

[4.] "Common carriers cannot, by any special contract, exempt themselves from liability from losses arising from negligence." *Berry et. al. vs. Cooper et. al.* 28 *Ga. R.*, 543.

[5.] Having taken the cotton, it lies on defendant to show what became of it; and to show it was lost without its fault. Does the proof relieve defendant from liability? The cotton was shipped for Wilmington, N. C. Why it was left at Branchville, S. C., the proof fails to inform us. The receipt given by Wilson says: "Which (cotton) it is mutually agreed, is to be forwarded to our agency nearest or most convenient to destination only, and there delivered to other parties to complete the transportation." Was Branchville the agency nearest or most convenient to destination,

41

and was the cotton delivered to other parties to complete the transportation? Delivered to whom?

[6.] It was left on a side track, within ten feet of the passing engines, and was in danger of fire from the sparks, and was actually burned in a short time thereafter; or, as Damiste, the conductor, says, "about that time." Cole, Superintendent of Georgia Railroad, "an expert," says, when cotton is left at a station, it should be under guard, and when left on side lines, is in danger of being fired from passing engines: the conductor says the same thing. Now, what excuse does defendant offer for leaving this cotton in this exposed condition, and without a guard? We have looked in vain for any sufficient excuse in the testimony. If any justification exists, we presume it can be made appear on another trial. To our minds, the leaving of 33 bags of cotton, on an open car, within ten feet of the track, where it is exposed to sparks of fire from passing engines, without any guard, and without any good reason for so doing, looks very much like gross negligence, and, unexplained, makes defendant liable for the loss thereby occasioned. At any rate, as the defendant, in this case, has, in our opinion, failed to show that there was "no negligence" on its part—and this burden was upon it, *Berry vs. Cooper, supra,*—we think the ends of justice require a new trial.

[7.] We do not think the Court erred in refusing to charge, as set out in the 3d ground of the motion for a new trial. The "Act to define the liability of common carriers, in certain cases," assented to 18th April, 1863, was passed to meet a certain state of things, specified in the preamble, and we are not disposed to extend its provisions beyond its terms. It has expired by its own limitation. We do not think the facts of this case come within its provisions. We think the notice spoken of in the Act was public notice.

A new trial should be granted on the ground indicated above.

Judgment reversed.