## PEMBERTON COMPANY vs. NEW YORK CENTRAL RAILROAD COMPANY.

An agent in St. Louis for several railroad corporations whose roads together formed a line from that city to Boston was instructed by one of them (whose road lay in New York) not to receive any cotton in its behalf for transportation without writing into the bill of lading an exemption of the carriers from the risk of fire. A factor in St. Louis of a mill corporation in Massachusetts, who was aware of these instructions, and had frequently argued to the railroad agent that the carriers would be liable for a loss by fire notwithstanding such a writing; and who had repeatedly delivered to said agent parcels of cotton for transportation over the line to his principals in Boston, and in each instance, after the delivery, had received from him and forwarded to them a bill of lading of the parcel as the only bill of lading thereof, knowing that the clause " Owner's risk of fire " was written into it, and which stipulated for the exemption of the line from that risk as a part of the consideration of the contract; delivered another parcel of cotton to the agent in St. Louis on June 30, for transportation to Boston, and afterwards, and while the cotton was still in St. Louis, received from him a like bill of lading, dated July 1, as the only bill of lading of it, and, knowing its contents, forwarded it to his principals. Before this transaction, their treasurer, in conversation with the railroad agent, had said that he did not like the exemption clause above quoted, and the agent had replied that it made no difference, and that the carriers were liable notwithstanding what they wrote in that way; but this conversation was not intended or understood by either party, at the time, as varying the legal effect of any previous or subsequent contracts for transportation. On the line between St. Louis and Boston the cotton was destroyed by fire, upon the railroad in New York, without negligence of that railroad corporation. *Held*, that the railroad corporation was not liable for the loss.

The mere fact that a railroad corporation, transporting bales of cotton as a common carrier, packed them into a car so tightly that on their taking fire, the car could not be unloaded, is not conclusive of negligence in the packing.

CONTRACT, with counts in tort, against the defendants as common carriers, to recover the value of some bales of cotton which they had received and agreed to transport for hire over their railroad in the state of New York. No question was made as to the form of the declaration. The answer admitted the receipt of the goods, but denied the defendants' liability; and alleged that the goods were lost and destroyed by fire, and not through any negligence of the defendants, and that they received and undertook to transport the goods solely under a written contract, which they alleged to have been signed by the agent of the plaintiffs in their behalf. Trial, without a jury, before *Gray*, J., who reported the following case to the full court:

" The defendants were common carriers, whose railroad extended from Buffalo to Albany in the state of New York. The

cotton, being the property of the plaintiffs, was delivered on June 30, 1865, at St. Louis, by Frank G. Pratt, the plaintiffs' factor and authorized agent, to Jacob Merritt, to be transported over the line of the defendants' and other railroads, of which Merritt was the recognized transportation agent; and was forwarded by Merritt, consigned to the plaintiffs' treasurer at Boston. The rate of freight was orally agreed upon by Pratt and Merritt, before the latter received the cotton; and after Merritt had received the cotton, and while it was in his possession at his press in St. Louis for the purpose of being compressed, a paper was signed by him, and delivered by him, or by some clerk authorized by him, to Pratt, who knew its contents and afterwards forwarded it to the plaintiffs at Boston."

This paper, dated July 1, 1865, under the caption "Merritt's Express Freight Line," was entitled "Freight Contract, St. Louis to Boston, *viâ* New York Central, Pennsylvania Central or Baltimore & Ohio Railroads;" "Route, rail;" and acknowledged the receipt from Pratt of "a hundred and forty-four bales of cotton : Owner's risk of fire : Contract time from St. Louis to Boston, fourteen days:" "at the rate of $9.60 per bale, or to pay a forfeiture of 5c. per 100 lbs. per day for each and every day said cotton is over said time in transit:" "This contract and the responsibility of the parties hereto being limited and controlled by the rules and regulations printed on the back of this receipt," one of which was as follows : "It is agreed, and is a part of the consideration of this contract, that the line will not be responsible for loss or damage to goods occasioned by fire, from any cause whatever, while in transit or at stations."

"Pratt had previously delivered to Merritt large amounts of cotton for transportation by the same line to the plaintiffs at Boston; and after the delivery of each parcel to Merritt, and before it was taken to the railroad station, had received a similar bill of lading, with knowledge that it contained the words 'Owner's risk of fire,' which was by him sent to and received by the plaintiffs. Merritt's instructions from the defendants were, to receive no cotton in their behalf for transportation,

without writing in the contract or bill of lading the exception of the risk of fire; and he had frequently informed Pratt that he had ·no authority to receive cotton without such an exception. It had often been a subject of discussion and controversy, between Merritt and Pratt, whether the railroad corporations would be liable for a loss by fire, notwithstanding the terms of the bills of lading, Pratt insisting that they were so liable, and that the words in question had no legal effect. Each bill of lading was delivered by Merritt, and received by Pratt, as the only bill of lading of the goods described therein. Neither Pratt nor the plaintiffs ever assented to such an exception, otherwise than may be properly inferred from the facts above stated.

" The plaintiffs' treasurer, whose place of business was in Boston, testified that before July 1, 1865, perhaps within a week or a month of it, but he should think six months before, he met Merritt in the street in Boston, talking with another person whom he was trying to induce to let him ship freight for him ; that the witness stopped a moment, and said, ' I do not like that clause — Owner's risk of fire; ' and Merritt said, that would make no difference — that the railroad companies were liable notwithstanding what they wrote in that way. From this testimony, and the manner in which it was stated by the witness, I was of opinion, and find as matter of fact, that this conversation was not intended or understood by either party at the time as varying the legal effect of any contracts previously or subsequently made between Pratt and Merritt. This testimony was introduced against the objection of the defendants; and the question of its competency, if material, is reserved.

" On July 12, 1865, while the cotton was on its way to Boston, over the defendants' railroad, in a wooden car covered with canvas and painted, such as cotton and other merchandise were usually carried in, and forming one of a freight train of some twenty cars, the cotton was found to be on fire ; the train was immediately stopped ; the doors of the car, which were sliding doors closed and locked, were opened, but the bales of cotton were so closely packed and wedged in that they could not be removed, notwithstanding every effort was made to do so ; the

train was drawn at once to the next station, a quarter of a mile off, where there was abundance of water; a hole was cut in the top of the car, and every possible effort made to extinguish the fire by pouring on water, and by other means, without success; and the car was then detached from the train, and part of the cotton saved. It was admitted that there was no negligence after the fire was discovered. But it was contended for the plaintiffs, that the negligence of the defendants in packing the cotton in the car caused the loss. I find, as a fact, that there was no such negligence. The questions, whether this finding is warranted by law, and whether upon the whole case the defendants are liable, are reserved for the determination of the full court." If, in their opinion, the plaintiffs were entitled to recover, judgment was to be rendered for them.for a certain sum, otherwise judgment for the defendants.

*J. D. Ball & G. C. Tobey,* for the plaintiffs. 1. The defendants, being common carriers, were bound to receive all merchandise offered to them for transportation, and could not limit their common law liability for it without the assent of the party delivering it to be transported. And if they had no right themselves to refuse to transport merchandise unless with a limitation of their liability, they could not do so through an agent. Their instructions to Merritt to receive no cotton in their behalf for transportation, without writing the exception of the risk of fire in the contract or bill of lading, were therefore against public policy and of no force. Had the instructions been to insert the exception whenever agreed to by the shipper, they might have been valid. If the defendants could limit Merritt's power in this respect, they might limit the power of all their officers and agents, and, being a corporation acting by officers and agents only, might effectually nullify all their common law liability. Therefore, when they created him their agent, they invested him, notwithstanding their instructions, with authority to receive freight under a limited liability when the shippers assented to the limitation, but subject to all the common law liability when the shippers did not assent to the limitation. It follows, that the fact of Merritt's informing Pratt of his instructions is of no avail

to the defendants. Merritt, on the facts, stands as their general agent.

2. The rate of freight was agreed upon before the cotton was received; and the cotton was delivered to Merritt on June 30, to be transported over a line consisting, in part, of the defendants' railroad. The contract was thus complete, and the full common law liability of common carriers attached to the defendants, on June 30. When there is an attempt to limit the liability in the original contract, the assent to the limitation must be given at the time the merchandise is received or the contract entered upon; and the burden to show such an assent is on the defendants. *Brown* v. *Eastern Railroad Co.* 11 Cush. 97–100. *Malone* v. *Boston & Worcester Railroad Co.* 12 Gray, 388. *Perry* v. *Thompson*, 98 Mass. 249, 253. Redfield on Carriers, §§ 144–148. But the facts in this case do not even show any such attempt; for it was not till July 1, or after July 1, (and the report does not find how long after,) that the receipt was given, making any allusion to a limitation of liability. The common law liability had already attached, and there is nothing in the facts which shows, at any time after the receipt was given, any assent of the plaintiffs to its modifications of that liability. The case distinctly finds that it had often been a subject of discussion and controversy between Merritt and Pratt, whether the railroad corporations would be liable for a loss by fire, notwithstanding the terms of the bills of lading, Pratt insisting that they were so liable and that the words in question had no legal effect. The fact that bills of lading in similar form had frequently before been given to Pratt has therefore no tendency to show that he assented to the limitation in those cases or in this case; for it thus appears that he had insisted that the railroad corporations were liable notwithstanding such bills of lading. The previous course of dealing, in the light of this "discussion and controversy," shows a distinct refusal to agree to any limitation whatever of liability; and the case, instead of showing any assent, shows only an unsuccessful attempt to limit liability, Pratt insisting upon no limitation. *Judson* v. *Western Railroad Co.* 6 Allen, 490, 491. *Buckland* v. *Adams Express Co.* 97 Mass. 124.

*Perry* v. *Thompson*, 98 Mass. 249. Redfield on Carriers, §§ 141–148. *Levering* v. *Union Transportation & Insurance Co.* 42 Missouri, 88, 93. *Grace* v. *Adams Express Co.* 100 Mass. 505. *Michigan Central Railroad Co.* v. *Hale*, 6 Mich. 257, 258. In no instance is it shown that the plaintiffs, except through Pratt, received any of those bills of lading until after the cotton was in transit, and Merritt's statement to the plaintiffs' treasurer shows that Merritt himself considered the attempted limitation of no force, and is also conclusive that Pratt never had assented to the exception in any previous bills of lading. *Simons* v. *Great Western Railway Co.* 2 C. B. (N. S.) 620.

3. The report finds that the bales of cotton were so closely packed and wedged in that they could not be removed, notwithstanding every effort was made to do so. Such a mode of packing the cotton into the car was in and of itself negligence, and the judge should have so found. *Sager* v. *Portsmouth, Saco & Portland Railroad Co.* 31 Maine, 228. *Squire* v. *New York Central Railroad Co.* 98 Mass. 239, 246. *Levering* v. *Union Transportation & Insurance Co.* 42 Missouri, 88, 96.

*E. Merwin*, for the defendants. 1. It is settled law that common carriers may by special contract, or by notice with the express or implied assent of the party for whom they are transporting goods, exempt themselves from liability for loss by fire or other casualty not resulting from their own negligence. *Grace* v. *Adams*, 100 Mass. 505. *Squire* v. *New York Central Railroad Co.* 98 Mass. 239. *Perry* v. *Thompson*, Ib. 249. *Judson* v. *Western Railroad Co.* 6 Allen, 486. *Smith* v. *New York Central Railroad Co.* 24 N. Y. 222. *Bissell* v. *New York Central Railroad Co.* 25 N. Y. 442. *York Co.* v. *Central Railroad Co.* 3 Wallace, 113. The bill of lading given by the agent of the defendants and accepted by the plaintiffs' agent constituted such a contract. *Grace* v. *Adams*, 100 Mass. 505. *Gage* v. *Tirrell*, 9 Allen, 299, 307, 308. *York Co.* v. *Central Railroad Co.* 3 Wallace, 113. *Ohrloff* v. *Briscall*, Law Rep. 1 P. C. 231. The defendants had a right to insist upon the exemption from liability for loss by fire, and to instruct Merritt to receive no cotton in their behalf for transportation without such an exemption; because, first, they

were under no legal obligation whatever to make any contract with the plaintiffs at St. Louis in reference to the transportation of the cotton; Redfield on Carriers, § 140; *Judson* v. *Western Railroad Co.* 6 Allen, 490, 491; and secondly, because the plaintiffs accepted the consideration for this exemption, in the benefit of a reduced rate of freight, and other advantages secured to them in the bill of lading.

2. The discussions which had taken place upon some previous bailments, as to the legal effect of the fire clause, are not competent to impair the binding force of this bill of lading as the contract of the parties. On the contrary, if admissible, they furnish an additional reason why it should be held conclusive. The defendants insisted upon the clause for the very reason, as they contended, that its legal effect was to exempt them from loss by fire; and the plaintiffs accepted the contract thus written, "as the only bill of lading," not only with full knowledge of its terms, but thus also of what the defendants claimed to be its meaning and effect, and were content to run their own risk as to that question. No question or objection whatever was made in behalf of the plaintiffs when this bill of lading was delivered and accepted; and this acquiescence, especially in view of the former course of dealing, is, of itself, conclusive upon the plaintiffs. The conversation of their treasurer with Merritt is incompetent; and has no bearing except to show that the plaintiffs well understood that the fire clause had been and would continue to be inserted in all bills of lading given in behalf of the defendants at St. Louis, and that the defendants would not receive cotton at the former rates of freight except with that exemption — with which knowledge the plaintiffs received without objection the bill of lading now in issue.

3. The question of negligence was one of fact, and the finding of the judge thereon is conclusive.

MORTON, J. The principles of law upon which the rights of the parties in this case depend have been fully discussed in several recent cases in this Commonwealth. *Grace* v. *Adams*, 100 Mass. 505. *Squire* v. *New York Central Railroad Co.* 98 Mass. 239. *Perry* v. *Thompson*, Ib. 249. *Judson* v. *Western Railroad*

*Co.* 6 Allen, 486. These cases conclusively settle that a common carrier may by a special contract, limit his common law liability, so as not to be responsible for a loss or damage by fire occurring without negligence on his part.

We are of opinion that the case at bar falls within this principle. It appears from the report, that the defendants received the cotton which is the subject of this suit, for transportation under a written contract or bill of lading, which contained an exemption from all risk of loss or damage by fire. And it is clear that the plaintiffs accepted this bill of lading as the contract under which their goods were to be carried. They had no other voucher or evidence of the contract. They had often before forwarded cotton over this line, under contracts with Merritt, as agent of the defendants, all of which contained the same exemption. Their agent, Pratt, knew that Merritt had no authority to receive, or contract for the transportation of, cotton on behalf of the defendants, except upon a contract containing this exception of the risk of fire; and at the time this cotton was delivered to be forwarded, and as a part of the transaction, he received the bill of lading in question, knowing its contents and making no objections to its terms, and forwarded it to the plaintiffs in Boston as the only bill of lading or contract of carriage of these goods. The bill of lading thus delivered and accepted constituted the only contract of carriage, and both parties are bound by its provisions.

The fact that Pratt and the plaintiffs' treasurer had previously expressed their belief that, notwithstanding the terms of the bills of lading, the defendants would be liable in case of loss by fire, is immaterial. It is clear that this was merely an expression of opinion as to the legal effect of the contract, and was not intended or understood as varying its terms.

The plaintiffs urge that the defendants as common carriers were required by law to transport all goods offered them, and that the plaintiffs had a right to insist that their cotton should be carried by the defendants under their common law liability as insurers. But the plaintiffs did not choose to insist upon their rights at common law; and, instead of doing so, volunta-

rily and intelligently entered into a special contract with the defendants. They received the benefits of this contract in the reduced freight and other advantages secured to them therein, and must be held to be bound by the condition which threw the risk of fire upon them.

The question, whether the loss was caused by any negligence of the defendants, is a question of fact, and the finding thereon of the judge who heard the case is conclusive. As, therefore, the loss in this case was caused by fire, without negligence on the part of the defendants, it follows that the plaintiffs are not entitled to recover. *Judgment for the defendants.*