THE CENTRAL RAILROAD & BANKING COMPANY vs. AVANT.

80   195
86   632

80   195
90   500

80   195
97   769

80   195
116  866

80   195
117  837

80   195
120   66

80   195
125  513

1. Where suit was brought against a railroad company for failing to deliver to the consignee two car-loads of watermelons, according to the contract of affreightment, and the evidence showed that they were in fact delivered at the point of destination within a reasonable time, but the consignee refused to receive them on the ground that they were damaged by not being properly loaded, and that they had become bruised and a part of them were rotten, it was error to charge that if the defendant did not put the melons in good, safe cars, and they had to be transferred from the cars in which they were loaded, whereby damage accrued, the jury should find for the plaintiff the amount of such damage. This charge changed the issue made by the plaintiff in his declaration.

2. While a common carrier cannot limit his liability by any notice given, or in any receipts given, yet where a special contract was made and signed between a railroad company and a consignor for a shipment of watermelons, in which it was stipulated that the liability of each company over whose lines shipments should be made, should cease as a common carrier at the station where delivered to the next carrier or to the consignee, such a contract was binding; and where the evidence showed that the melons were delivered by the first railroad to the next road in the connecting line, in good condition, and were transferred by another railroad in the connecting line from the cars in which they were shipped to other cars, and were tendered to the consignee in a bruised and damaged condition, the first road in the line was not liable therefor; especially where one of the stipulations of the contract was, that the railroad company should not be liable for "losses occurring from the perishable nature or inherent defects of the property shipped."

3. Where suit was brought against a railroad company for failure to carry and deliver a car-load of watermelons according to its contract, it would have been admissible, under proper pleadings, to have shown that another person sued the plaintiff for the same melons; that the plaintiff proposed to the attorney of the company that if the latter would give him all the papers in connection with this shipment, to enable him to defend the suit against himself, he would withdraw the suit against the railroad as to these melons; that the plaintiff defended the suit against him on the ground that he had not received the melons, but the agent of the person suing him had ordered them shipped to a different market; that such defence was successful; and that the present plaintiff paid the costs and the other party stopped the suit. But in the present case, there were no proper pleadings to warrant the admis-

sion of this evidence, and there was no error in excluding it, although a wrong reason may have been given therefor.

February 6, 1888.

Railroads. Common carriers. Contracts. Evidence. Before Judge HARRIS. City court of Macon. March term, 1887.

Reported in the decision.

LYONS & ESTES, for plaintiff in error.

M. G. BAYNE, contra.

SIMMONS, Justice.

It appears, from the record in this case, that J. R. Avant brought suit in the city court of Macon against the Central Railroad and Banking Company, for the sum of $300 and interest. He alleges in his petition that

"Said railroad company did, on the 15th of July, 1886, agree and contract to carry, ship and deliver two car-loads of melons, seventy and one hundred and seventy-eight, to J. S. Duckwald, Indianapolis, Indiana, from Waldron, Georgia; that said melons were the property of the petitioner, and worth the net sum of $100 each; that said railroad company failed and neglected to deliver said cars so numbered to said consignee, to the damage of the petitioner $200. Petitioner further shows that, on the 19th of July, 1886, said railroad company agreed and contracted to carry, ship and deliver, a car of melons, number 919, to J. A. Baird & Co., Cincinnati, Ohio; that said company failed to deliver said car of melons to said consignee; that said melons were the property of the petitioner and of the net value of $100; that by said company's failing to deliver said cars as they agreed and undertook to do, the petitioner was injured and damaged in the sum of $300, besides interest, which they refuse to pay."

On the trial of the case, the jury returned a verdict for $225 against the defendant. A motion for a new trial was made, which was overruled by the court, and the defendant excepted.

It appears, from the evidence as disclosed in this record, that on the 15th of July, 1886, the railroad company

received from the plaintiff, at Waldron, Georgia, two loads of watermelons, which it undertook to deliver to Duckwald, in Indianapolis, Indiana. On the 19th of July, 1886, it received another car of melons from the plaintiff, which it undertook to transfer and deliver to Baird & Co., Cincinnati, Ohio. The evidence discloses that, on the 16th of July, at 5.20 p. m., the first two loads of melons were received in Chattanooga by the Nashville & Chattanooga Railroad Company, and that the agent of the latter company, without the knowledge or consent of the Central Railroad Company, transferred said melons from the Central Railroad Company's cars to the cars of the Nashville & Chattanooga Railroad Company; and that on the 19th of July, at 5.25 in the morning, they arrived at Indianapolis, Indiana, and Duckwald, the consignee, was notified by the railroad company of their arrival. He refused to receive them. The reason assigned in his testimony is, that the melons were damaged by not being properly loaded; that they had become bruised, and a portion of them rotten. Upon his refusal to receive them, the railroad company put the melons up at auction and sold them at $140 for both car-loads. It seems that the third car of melons, which was shipped on the 19th of July, was entirely lost and, was never received by Baird & Company in Cincinnati.

1. Among the charges excepted to in the motion for a new trial, is the following, which is set out in the 9th ground: "If the Central railroad did not put melons in good, safe cars, and they had to be transferred from such cars, and damage accrued by the transfer, caused by such being in such cars, then you should find for the plaintiff such damages." It will be observed that the declaration does not complain that the melons had been damaged because the defendant did not put the melons in safe cars, and that for that reason they had to be transferred to other cars and were damaged in the transfer; but the complaint is that the plaintiff was injured and damaged by the fail-

ure of the company to deliver the cars. There is no complaint in the declaration that the melons were damaged by unsafe cars, or by the transfer of the melons to other cars. The testimony shows that the melons were delivered at Indianapolis within a reasonable time from the date of shipment, and that the consignee of the plaintiff refused to receive them because some of them were bruised and others were rotten. The court, in giving the charge complained of, changed the issue as made by the pleadings in this case. The issue as made by the pleadings was, failure to deliver in accordance with the contract; the issue as made by the charge of the court was, damage to the melons on account of the unsafe cars, and the transfer from the defendant's cars to others belonging to different roads. When a plaintiff brings a suit for damages, alleging that the defendant has injured and damaged him by failing to deliver certain property at a certain place, he has no right to change the issue on trial and claim damages on another and different cause of action, without an amendment to the pleadings. We think, therefore, that the court erred in giving this charge to the jury, thereby changing the issue as made by the plaintiff in the declaration.

2. We think the court erred in giving this charge, for another reason. The plaintiff put in evidence a written contract made between him and the defendant. That contract contains the following stipulation :

" Losses occurring from the perishable nature or inherent defects of property, excepted; . . . . it being distinctly understood that the responsibility of each company over whose lines shipments shall be transported, shall cease as a common carrier at the station where delivered to the next carrier or to the consignee."

It is true that a common carrier cannot limit his liability by any notice given, or in any receipts given, but it " may make an express contract, and will then be governed thereby." Code, §2068. Here, then, was a contract signed by the plaintiff and the defendant, wherein it was ex-

pressly stipulated that the company's liability should cease as a common carrier when the melons were delivered to the next carrier. The freight bills introduced by the plaintiff show the different railroads over which these melons were to be forwarded, and the proportion of freight to which each was entitled. These bills show that one of the roads over which the melons were to be forwarded was the Western & Atlantic railroad, in this State. The testimony shows that the melons were delivered by the Western & Atlantic railroad, in Chattanooga, to the Nashville & Chattanooga railroad, and were transferred by the latter railroad from the cars in which they were originally shipped into their own cars. We can, therefore, infer from this testimony that the Central railroad delivered these melons to the Western & Atlantic railroad, and that the latter delivered them to the Nashville & Chattanooga railroad, and that they were then carried to Indianapolis. In accordance with the stipulation in the contract signed by the plaintiff and the defendant, the liability of the defendant ceased when it delivered the melons to the Western & Atlantic railroad. The testimony shows that, at the time of this delivery to the Western & Atlantic railroad, the melons were in good condition. If when they arrived at Indianapolis the consignee, Duckwald, who was the agent of the plaintiff, refused to receive them on account of their being rotten and bruised, we do not see how under this contract the defendant, the Central Railroad Company, can be held liable therefor, especially as one of the stipulations of the contract was that they should not be liable for "losses occurring from the perishable nature or inherent defects of property shipped." This disposes of the first two cars of melons shipped, and brings us to the consideration of the liability of the defendant for the loss of the third car.*

3. It will be remembered that this car was never delivered to Baird & Co., the agents of the plaintiff, in Cincin-

---

*The plaintiff bought this car-load from one Holt at Waldron.  (Rep.)

nati, and so far as disclosed by the record, was never heard of after it left Waldron, the place from which it was shipped.   The plaintiff in error complains, in the 10th ground of the motion, that the court refused to allow Avant, the plaintiff, to testify as follows: that after Holt sued for the car (919) of watermelons, Avant came to R. F. Lyon, the attorney for defendant, and proposed that if he, Lyon, would give him all the papers in connection with this shipment, to enable him to defend against Holt, he would withdraw this suit as to this car-load of melons, and it would be all right; that Holt had sued Avant for this car of melons, and Avant had refused to pay, and had defended on the ground that he had not received the melons and that Holt's agent had ordered them shipped to a different market; that such defence was successful, and that Avant paid the costs and Holt stopped the suit.

The court seems to have excluded this testimony on the ground that it was evidence of a compromise.   We think the testimony was not admissible, and that it was not error to exclude it, although the court may have given the wrong reason for excluding it.   The ruling was right, because there was no plea under which it could have been admitted.   If the defendant had filed the proper plea and had offered this testimony to support it, it would have been admissible.

Judgment reversed.