The Richmond & Danville Railroad Co. *v.* Shomo.

1. Resort cannot be had to a prior parol agreement to add to or vary, in behalf of the shipper, the terms of a special contract contained in a bill of lading accepted and signed by him before the goods were shipped, it not appearing that his signing was the result of fraud or mistake. Code, §2068.
2. Where two papers are executed in duplicate, one of the parties signing one of the papers and the other party signing the other, both papers together are to be treated as one document.

October 24, 1892.

Contract. Evidence. Carrier. Before Judge West-moreland. City court of Atlanta. March term, 1892.

Barrow & Jackson, for plaintiff in error.
Mayson & Hill, *contra.*

Simmons, Justice.

The action was upon an alleged contract between the shipper and the defendant, to ice and keep iced a refrigerator car in which peaches were shipped over the defendant's railroad and connecting lines from Atlanta to Philadelphia, the breach of this contract resulting, it was alleged, in the decay and total loss of the fruit. The verdict was in favor of the plaintiff for the full value of the peaches, less the freight.

The plaintiff in error complains first of the overruling of its motion for a nonsuit. This motion should have been granted. When the plaintiff announced closed and the motion was made, the evidence had failed to show any injury to the fruit or any degree of negligence on the part of the defendant. The alleged contract was, that the car was to be iced once at Atlanta,

and once again between Atlanta and Philadelphia. It appeared that this was done at Atlanta, the icing as well as the packing of the fruit in the car being conducted under the supervision of the plaintiff, and it does not appear that there was any failure to ice it after it left Atlanta. The plaintiff testified that parties in Philadelphia notified him that the fruit was rejected, but the reason of its rejection was not stated. Whether it was rejected on account of its damaged condition and to what extent it was damaged if at all, are questions upon which the evidence up to this point is silent. After the motion to nonsuit had been overruled, and after the defendant had closed its testimony, there was an attempt to supply this omission, the plaintiff stating that the parties to whom the fruit was sent rejected it " because in bad order," but beyond this brief statement, there is no evidence as to its condition at or after the time of arrival; nor does it appear what length of time had elapsed between the time of arrival and the time it was discovered to be in bad order. Moreover, we think a recovery is precluded by the terms of the shipper's contract with the defendant. Accepting as true the plaintiff's account of the alleged contract as to the icing of the car between Atlanta and Philadelphia, it was merely a parol stipulation, and was succeeded by a written contract in which no such stipulation was included. According to his testimony, he first approached the general agent of the defendant at Atlanta, and stated that he had a car-load of peaches he wanted to ship to Philadelphia, and that he wanted them iced; the agent informed him where he could get a car, and " was to see that the car was iced between Atlanta and Philadelphia." Afterwards the plaintiff got the car as instructed, and had it iced and carried to the depot of the defendant. When the peaches were delivered at the depot and before they were shipped, the agent who re-

v 90 32

ceived them handed him a bill of lading which, besides acknowledging the receipt of the packages as "in outward good order," contained a special contract in which it was stipulated, among other things, that the carrier should not be liable for loss to perishable property of any kind occasioned by delays or change of weather, and that for all loss or damage occurring in the transit of the packages, the legal remedy should be against the particular carrier in whose custody the packages might actually be at the time of the happening thereof, and that the defendant assumed no other responsibility for the safety or safe-carriage of the packages than might be incurred on its own road, etc. No rate of freight was stated, and none was collected from the shipper. This contract was executed in duplicate, one of the papers being signed by the agent of the carrier and accepted by the shipper, and the other being signed by the shipper and retained by the agent. Both papers, therefore, are to be treated as one and the same writing. It is to be assumed that when the plaintiff signed this contract he knew its contents; it was his duty to know, and it is not denied that he did. If it failed to speak the whole contract, it was incumbent upon him to see that it did so before he accepted and signed it. The rule is well settled, that resort cannot be had to a prior parol agreement to add to or vary, in behalf of the shipper, the terms of a special contract contained in the bill of lading accepted and signed by him before the goods are shipped, where it does not appear that his signing was the result of fraud or mistake. Here it is not pretended that there was fraud or mistake. The contract as signed must therefore be taken as the final repository and sole evidence of the agreement between the parties, and any limitations in it not inconsistent with the law are binding upon the shipper. Code, §2068. Porter, Bills Lading, §64 *et seq.*; 2 Rorer, Rail-

roads (ed. 1884), 1323; Hutchinson, Carriers, §§126, 128; 2 Beach, Railways, §§962–3; 2 American & Eng. Enc. L. 228; Rwy. Co. v. Cleary, 77 Mo. 634, 46 Am. Rep. 13; Snow v. Rwy. Co., 109 Ind. 422; Rwy. Co. v. Weekly, 50 Ark. 397, 1 Am. St. Rep. 104, and note, 117; Rwy. v. Harwell, 45 Am. & Eng. R. R. Cas. 362 (Ala.); Pemberton v. R. Co., 104 Mass. 144; Long v. R. Co., 50 N. Y. 76; Germania Fire Ins. Co. v. R. Co., 72 N. Y. 90, 28 Am. Rep. 113.

In the case of *Purcell* v. *Southern Express Co.*, 34 *Ga.* 315, relied upon by counsel for the defendant in error, no special contract had been signed by the shipper; there was a mere receipt for the goods. In Bostwick v. R. Co., 45 N. Y. 712, and other cases relied upon, the goods had been shipped or were beyond the control of the shipper before the bill of lading was accepted. In some of the cases, as in Hamilton v. R. Co., 96 N. C. 398, the damage was done or had its inception before such acceptance. Here, however, no damage had accrued, and it was in the power of the shipper, when this paper was tendered him, to refuse to sign, and to reclaim his goods unless the contract was made to conform to the understanding which he claims was previously had with another agent of the defendant.

By the written contract, as we have seen, no obligation was assumed by the defendant to keep the car iced after its departure from Atlanta, and any liability for injury occurring beyond its own terminus is expressly excluded. Whether, independently of contract, any duty may exist on the part of a carrier to keep its cars iced in the transportation of freight of this kind, is a question we are not required in this case to decide; there was no evidence of any negligence in this respect upon the defendant's line of railroad, and it was competent for the defendant to contract, as it did in this instance, that for any damage not occurring on its own line it

should not be held liable. A common carrier is not bound to issue a bill of lading for the transportation óf freight beyond its terminus, and if it does so, we see no reason why it may not stipulate, as a condition of the undertaking, that its liability shall extend only to injuries occurring upon its own line of railroad. *Central R. Co.* v. *Avant,* 80 *Ga.* 195(2), 198; Hutchinson, Carriers, (ed. 1891), §149b *et seq.*

The verdict is not sustained by the evidence, and the judgment denying a new trial is *Reversed.*