## KAVANAUGH & COMPANY *v.* SOUTHERN RAILWAY COMPANY, and *vice versa.*

1. Civil Code, § 2298, providing when there are several connecting railroads under different companies, and goods are intended to be transported over more than one railroad, each company shall be responsible only to its own terminus and until delivery to its connecting road ; that the last company which has received the goods as " in good order " shall be responsible to the consignee for any damage, open or concealed, done to the goods ; and that such companies shall settle among themselves the question of ultimate liability, is not, as applied to shipments from beyond the State, repugnant to the clause of the constitution of the United States conferring on Congress the power to regulate commerce among the several States of the Union.
2. The statutory remedy afforded by this section can be waived by special contract between the consignor and the initial railroad ; and when so waived, the consignee's remedy is upon the common-law liability of the carriers over whose lines the shipment is made.

Argued April 8 — Decided May 12, 1904.

Action for damages.    Before Judge Norwood.    City court of Savannah.    May 28, 1903.

*O'Connor, O'Byrne & Hartridge,* for plaintiff.
*Osborne & Lawrence,* for defendant.

EVANS, J.    Kavanaugh & Company sued the Southern Railway Company, in the city court of Savannah, to recover for damage alleged to have been done to certain apples shipped from County Line, New York, to Savannah, Georgia.    The cause of action was based on the statutory liability of the defendant under the Civil Code, § 2298, as the last connecting carrier receiving the apples " as in good order."    The defendant pleaded a special contract with the consignor as waiving this statutory liability, and also set up the defense that the statute was repugnant to the clause of the constitution of the United States conferring upon Congress the power to regulate commerce among the several States.    The plaintiff proved the damage to the apples, and that the defendant was the last connecting carrier receiving them " as in good order." The defendant proved the special contract discussed in the opinion. The court directed a verdict for the defendant, and the case is now here upon a bill of exceptions sued out by the plaintiff and a cross-bill sued out by the defendant.

1. The section of the code above cited reads as follows: " When there are several connecting railroads under different com-

panies, and the goods are intended to be transported over more than one railroad, each company shall be responsible only to its own terminus and until delivery to the connecting road; the last company which has received the goods as "in good order" shall be responsible to the consignee for any damage, open or concealed, done to the goods, and such companies shall settle among themselves the question of ultimate liability." The shipment of apples was delivered to the Southern Railway Company, the last connecting carrier, at Alexandria, in the State of Virginia. Its receipt for the apples as in "apparent good order" was equivalent to a receipt for the consignment as in "good order." *Forrester* v. *Georgia Railroad*, 92 *Ga*. 699. In the case just cited it was held that this section meant that " each of several connecting railroads shall be responsible only to its own *terminus* and until delivery to the next connecting carrier; but if any company, either actually or constructively, receives a consignment of freight ' as in good order,' it will become responsible even though the goods, before delivery to it, were damaged through the negligence of some other carrier, and it must look to the company actually at fault for reimbursement." (Page 703.) This was a case of intrastate shipment, and no point was made that the statute attempted to regulate commerce between the States. The power of Congress to regulate interstate commerce is plenary and exclusive. No fixed rule can be prescribed defining what will amount to a regulation of commerce. " Legislation, in a great variety of ways, may affect commerce and persons engaged in it without constituting a regulation of it, within the meaning of the constitution." Sherlock v. Alling, 93 U. S. 103. In the case of Hall v. DeCuir, 95 U. S. 488, Chief Justice Waite said: " The line which separates the powers of the States from this exclusive power of Congress is not always distinctly marked, and oftentimes it is not easy to determine on which side a particular case belongs. Judges not unfrequently differ in their reasons for a decision in which they concur. Under such circumstances it would be a useless task to undertake to fix an arbitrary rule by which the line must in all cases be located. It is far better to leave a matter of such delicacy to be settled in each case upon a view of the particular rights involved." If the statutes of a State are for the purpose of facilitating the safe transportation of goods, without

undertaking to regulate commerce or to interfere in any manner with the right of the parties to fix their liability by contract, they will be upheld, notwithstanding they may have an indirect or remote effect upon commerce. "A statute is in no just sense a regulation of commerce which does not undertake to impose any tax upon the company, or to restrict the persons or things to be carried, or to regulate the rate of tolls, fares, or freight. A State may enact a statute the object and effect of which are to make it more sure that railroad companies shall perform the duty resting upon them by virtue of their employment as public carriers to use the utmost care and diligence in the transportation of passengers and goods." C., M. & St. P. Ry. v. Solan, 169 U. S. 133.

The above-quoted section of our code imposes no burden on the carrier; it does not require the carrier to accept goods upon specific terms; it contains no restriction upon the parties to contract. No right or duty of the carrier which may properly arise from contract with the shipper is modified or abridged. There is no alteration of the rule of liability of railroad companies as common carriers as the same existed in this State at the time of the adoption of this section of the code. The "only change which this statute makes is to give the consignee a remedy against the last road receiving the goods 'as in good order' which he might not have had before the adoption of this section of the code. This is a cumulative remedy existing and established in addition to those remedies which he had already." *Falvey* v. *Georgia. R. R.*, 76 *Ga.* 600. This additional remedy is afforded through the medium of a rule of evidence prescribing the probative value of a voluntary admission. If the goods are in good order when received by the last connecting carrier and are negligently damaged by it, the liability would exist independently of the statute. The delivering carrier, under such circumstances, would be liable to the consignee, although the act of negligence causing the damage may have occurred in another State. The last connecting carrier is not bound to accept as in good order freight which is already damaged. If the goods are damaged, he may so specify in his receipt and be protected. He has full control over the matter, and if he knowingly accepts goods which are damaged, receipting therefor "as in good order," acceptance on such terms might be construed as an assumption of the previous carrier's liability. Conduct like this would

at least lead to confusion in the endeavor to fix the responsibility for damage. The consignee would be put to great disadvantage in ascertaining which of a large number of connecting carriers might be responsible for damage to freight. The carriers ought to know in the first instance where to fix responsibility for damage resulting from the negligent handling of freight. If the last carrier issues its token that no damage to the goods occurred before they were received by it, can it be said that a legislative enactment, ordaining the conclusiveness of such an admission, is in any wise a measure regulating commerce? The legislature may provide the nature and extent of the legal presumption to be deduced from a given state of facts. Jones v. Brim, 165 U. S. 180. Section 2298 affords a remedy to the consignee based upon an admission of the last carrier. It does not create any new liability. At common law the carrier could only excuse non-delivery by showing it was prevented from compliance with its obligation to deliver by the act of God or the public enemy. If the goods are received in good order, the duty is to deliver in good order. Under this statute the carrier may defend by showing the goods, though apparently in good order, were in fact damaged before their receipt by the initial carrier. Central R. Co. v. Rogers, 57 Ga. 336. Or, the carrier may excuse itself by showing the damage resulted from inherent defects, such as decay, unmixed with negligence on the part of the carrier. Forrester v. Georgia R. Co., 92 Ga. 699. This last defense is likened to the act of God. In the absence of the statute under review, the carrier could dispute the truth of the statement in the receipt that the goods were in good order when received by it. The statute declares, however, that the carrier making the admission shall be bound by it; the evident purpose being, not to fix a new liability, but to give a remedy to the consignee to recover on an admission that the goods were in good order, irrespective of their actual condition when received. The carrier is not hurt; if its admission is true, its liability would exist at common law; if the admission is not true, the ultimate liability can be settled among the connecting railroads. We are constrained to hold that this section is not such a regulation of commerce as to be void because of its opposition to the interstate commerce clause of the Federal Constitution.

2. A common carrier is not bound to issue a bill of lading for

transportation of freight beyond its own terminus; and if it does so, it may stipulate, as a condition to the undertaking, that its liability shall extend only to injuries occurring on its own lines. *Central R. Co.* v. *Avant,* 80 *Ga.* 195; *R. & D. R. Co.* v. *Shomo,* 90 *Ga.* 496, 500. A limitation of its legal liability as a common carrier can not be accomplished by any entry on the receipt given, but must be the subject-matter of a special contract. Civil Code, § 2276. And if the contract had been executed in Georgia, it would not be binding unless signed by the shipper. But the contract was executed and partly performed in the State of New York, and the record discloses that by the law of the State of New York the mere acceptance by the shipper of a bill of lading containing a limitation makes a valid contract. Under the New York law, in the absence of fraud, concealment, or improper practice, the party receiving a bill of lading is presumed to have assented to all its stipulations, not unusual and unreasonable, limiting its common-law liability as carrier. Kirkland *v.* Dinsmore, 62 N. Y. 171; Belger *v.* Ex. Co., 51 N. Y. 166. The bill of lading embraced the following stipulations: "1st. No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof, or any damage thereto by leakage, breakage, chafing, loss in weight, changes in weather, heat, frost, wet, or decay. 2nd. No carrier is bound to carry said property by any particular train or vessel, or in time for any particular market, or otherwise than with as reasonable dispatch as its general business will permit. 3rd. No carrier shall be liable for loss or damage not occurring on its own road or its portion of the through route, nor after said property is ready for delivery to the next carrier, or to consignee." This bill of lading having been executed and partly performed in the State of New York, these stipulations were binding on the shipper to the same extent as if he had expressly assented to the same by a special contract. Being a valid contract under the law of the State where executed and partly performed, it is enforceable in this State. This contract is inconsistent with the liability imposed on the last connecting carrier by the Civil Code, § 2298, and the defendant pleaded the same to the statutory liability fixed in this section. The consignee's remedy in such a case is to sue the carrier causing the injury; his right to sue the last connecting carrier receiving the goods "as in good order,"

irrespective of causing the damage, has been waived by the special contract of his consignor.

An action framed under the Civil Code, § 2298, can not be converted into a suit upon the common-law liability for negligence; the liability in the first instance is statutory, and in the other it exists at common law. *Exposition Cotton Mills* v. *W. & A. R. Co.*, 83 *Ga.* 441; *Columbus & Western Ry. Co.* v. *Tillman*, 79 *Ga.* 607. The evidence showing a special contract in effect waiving the liability fixed by the statute, the court properly directed a verdict for the defendant.

*Judgment on main bill of exceptions affirmed; cross-bill of exceptions dismissed. All the Justices concur.*