8433, 8434.  DeBOW v. VICKSBURG, SHREVEPORT AND PACIFIC RAILWAY; and *vice versa.*

LUKE, J.  1. Service of process on a non-resident railroad corporation may be legally perfected, so as to give jurisdiction to a court of this State for the rendition of a judgment, by handing a copy personally to an agent who maintains an office in this State, furnished to him by the corporation, and who represents it in soliciting freight and other business.  *Bell* v. *New Orleans &c. R. Co.*, 2 *Ga. App.* 812 (59 S. E. 102).  The court did not err, after hearing evidence, in finding against the traverse and the plea to the jurisdiction.

2. A mere general limitation in a bill of lading, as to the value of property shipped, amounting to no more than an arbitrary preadjustment of value, will not serve to exempt the carrier from liability for the true value, if the property be destroyed by negligence of the carrier. *Central of Ga. Ry. Co.* v. *Hall*, 124 *Ga.* 322.

3. While "an interstate carrier may, by a fair, open, and reasonable agreement, limit the amount recoverable by the shipper to an agreed value made for the purpose of obtaining the lower of two or more rates proportioned to the amount of the risk" (Adams Express Co. *v.* Croninger, 226 U. S. 492, 33 Sup. Ct. 153, 57 L. ed. 314, 44 L. R. A. (N. S.) 257), and "knowledge of the shipper that the rate is based on value is to be presumed from the terms of the bill of lading, and of the published schedule filed with the interstate-commerce commission, and the effect of so filing the schedule makes the published rates binding upon shipper and carrier alike" (Boston & Maine Railroad Co. *v.* Hooker, 233 U. S. 97 (34 Sup. Ct. 526, 58 L. ed. 868, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593), requirements of the interstate-commerce law as to the

filing and publication of such schedules are not applicable, and no such presumption arises, when property is being transported free under the provision of the act of Congress of February 4, 1887, as amended March 2, 1889, "to regulate commerce" (c. 382, sec. 22), that nothing therein "shall prevent the carriage . . of property free or at reduced rates . . to or from fairs and expositions for exhibition thereat." 25 Stat. 862 (U. S. Comp. St. 1916, § 8595).

4. Where an interstate carrier issued a circular and published a general order providing that all shipments of hogs intended for exhibition at fairs and expositions should be carried thereto at the full tariff rates, but that if returned in thirty days they should be returned free from further freight charges, on presentation of the paid freight-bill showing that the shipment moved over the carrier's lines on the first movement, and of a certificate from the proper officers of the fair, showing that the hogs had been regularly exhibited and had not changed ownership, and thereafter a hog was shipped to a fair on the carrier's line, for the purpose of exhibition, and the shipper complied in all respects with this order, and the carrier accepted the hog for return shipment in accordance with the agreement to return it free from further freight charges, and, while in course of transportation, the hog received injuries which caused its death, the shipper, if the injuries resulted from negligence of the carrier, was not bound by an arbitrary prearranged valuation upon such property, printed in a bill of lading issued to him, acknowledging receipt of the hog for return shipment free of additional freight charges, and he was entitled to recover full damages for the loss sustained by him by reason of such negligence.

5. The court erred in limiting the plaintiff's recovery to the sum of $10, named in the bill of lading as the limit of recovery for a hog, and in directing a verdict for that amount. It was therefore error to overrule the plaintiff's motion for a new trial.

*Judgment on main bill of exceptions reversed; on cross-bill affirmed.*

*Wade, C. J., and Jenkins, J., concur.*

Decided February 7,—Rehearing denied February 27, 1918.

Action for damages; from Fulton superior court—Judge Bell. November 11, 1916.

*Atkinson & Born,* for plaintiff.

*Anderson & Rountree, R. W. Crenshaw,* for defendant.

### ON MOTION FOR REHEARING.

Jenkins, J., concurring specially. It appears that J. D. B. DeBow, the plaintiff in this case, delivered to the Western Railway of Alabama, at Montgomery, certain property, the value of which is sued for, and received from that road a through bill of lading for its transportation to the fair grounds at Shreveport, La. The defendant company, by its return bill of lading, consigned the property to DeBow at Montgomery, "D. H. to Meridian a/c La.

State Fair." By the twelfth clause of defendant's shipping agreement it was provided that "In case said live stock is to be transported over the line or lines of any other railroad company, the party of the first part shall be released from liability of every kind whatsoever after said live stock shall have left its road, it being agreed that it shall not be held or deemed liable for anything occurring beyond its line of road, except that it shall protect, in so far as it legally can, the through published rate of freight. The conditions of this contract, however, shall inure to the benefit of all carriers transporting said live stock, unless otherwise stipulated by them, but in no event shall one carrier be liable for the negligence of another." There was a clause in this bill of lading limiting the liability of the carrier to an agreed valuation of $10, and it was further stipulated that such agreement was voluntarily entered into by reason of the reduced rate obtained. The injury occurred on the lines of an intermediate connecting carrier, after the property had left the hands of the defendant company on its return shipment to Montgomery.

1. Assuming that the defendant was an initial carrier, I do not agree with its contention that by reason of the quoted clause in the bill of lading, limiting liability to acts of its own negligence, it was relieved from liability for negligence of its connecting carriers. Prior to the passage of what is known as the Carmack amendment to the Hepburn interstate-commerce act (34 Stat. 595, 3591, § 7, pars. 11, 12), and the enactment of the Georgia statute relative to intrastate shipments in conformity thereto (Civil Code of 1910, § 2777), it was the rule that a common carrier was not bound to issue a bill of lading for transportation of freight beyond its own terminus; and if it did so, it might stipulate, as a condition to the undertaking, that its liability should extend only to injuries occurring on its own lines. *Central R. Co.* v. *Avant,* 80 *Ga.* 195 (5 S. E. 78); *R. & D. R. Co.* v. *Shomo,* 90 *Ga.* 496, 500 (16 S. E. 220); *Kavanaugh* v. *Southern Ry. Co.,* 120 *Ga.* 62 (2), 65 (47 S. E. 526, 1 Ann. Cas. 705). Whether under the Federal statute a common carrier can now refuse an interstate shipment designated for a point beyond its own lines was left an open question by the Supreme Court of the United States in *Atlantic Coast Line R. Co.* v. *Riverside Mills,* 219 U. S. 186 (31 Sup. Ct. 164, 55 L. ed. 167, 31 L. R. A. (N. S.) 7); but

the decision therein rendered distinctly upheld the validity of the provision of the Carmack amendment imposing liability upon the initial carrier for loss occasioned anywhere en route, whether on its own lines or not, where it voluntarily receives such a shipment, and in spite of any agreement or stipulation limiting liability to injuries occurring on its own lines.

2. It also appears to be true that the act of Congress as amended, stipulating that "nothing in this act shall prevent the carriage, storage, or handling of property free or at reduced rates for the United States, State or municipal governments, or for charitable purposes, or to or from fairs and expositions for exhibition thereat," etc., permits the shipper and the carrier to enter into a special contract governing the terms of such a shipment, and that since such a shipment does not fall within the provisions of the act regulating the publication of rates and schedules (see ruling to that effect by Interstate Commerce Commission, Watkins on Shippers & Carriers (2d ed.) 847), no presumption arises "from the terms of the bill of lading and of the published schedule filed with the interstate-commerce commission" that knowledge was had by the shipper that the rate was based on *value*.

3. What appears to be the main difficulty involved in this case lies in the question as to whether or not under the facts, the defendant was in fact an initial carrier. Grave doubt upon this question is likewise shared by Wade, C. J. All of the judges agree that if the defendant be not an initial carrier, then there would be nothing in the acts of Congress or in the record which would prevent giving effect to the provision in the defendant's contract of shipment limiting its liability to acts of its own negligence. In their brief, counsel for the defendant say that "He [the shipper] received from said road [meaning the Western Railway of Alabama at Montgomery] its bill of lading, which provided for carriage from Montgomery to Shreveport at the full rate, and it was expressly agreed that there would be no charge for the return carriage." An examination of the bill of lading, however, does not disclose any provision or agreement whatever relative to a return shipment. It is true that the record discloses that the Western Railway of Alabama, which issued the original outgoing contract of shipment, had in fact previously filed with the interstate-commerce commission a classification sheet showing its tariff rates of

freight, wherein it was provided that "Shipments intended for fairs or expositions shall pay tariff rates from point of shipment to point of destination, and may be returned free via the same route," subject to certain conditions therein named. Since, however, it was not incumbent upon the carrier to thus file with the commission a schedule governing any special rates by which such shipments *might* thus be returned without additional charge, it does not seem that such a schedule of tariffs, though actually filed, must be taken as if included in the original contract of shipment, and (under the authority of the Hooker case, cited in paragraph 3 of the decision in this case) "binding upon shipper and carrier alike." Especially would this seem true where the record in no wise disclosed that the shipper had *actual* knowledge of the offer thus made by the filing of such proposal. If the Western Railway of Alabama, as the original outgoing carrier, had actually contracted with the shipper for a return carriage of the property, it would seem clear to all of us that the defendant company, as its connecting carrier, would have been acting for it in issuing the return shipping receipt in accordance with the original contract had with the railroad company at Montgomery. It appears that the defendant company itself had issued and posted its circular whereby it had agreed that shipments for exhibition at fairs and expositions should be returned over its own lines free of charge. Though it had received its portion of the original freight charge from the other company, it in fact entered into a contract with the shipper himself, whereby it issued its bill of lading for the return carriage of the property consigned to Montgomery "D. H. Meridian a/c La. State Fair." If the Alabama railway company was not obligated to make such return carriage, the contract thus made must have been on the part of the defendant and on its own behalf, and under it the defendant became the initial carrier. While the point would seem a close one, I have concurred in the judgment rendered, for the reasons indicated.