## 57. SOUTHERN EXPRESS COMPANY v. BRIGGS.

1. The demurrer in this case was "speaking" in character, and therefore properly stricken.

2. Technical pleading is not required in a justice's court; and in determining whether a justice's court has jurisdiction of a suit, it may be necessary to look not only to the summons, but to the evidence on which the plaintiff relies for a recovery. Tested by this rule, a justice's court has jurisdiction of a suit for damages against a common carrier for breach of contract in failing to deliver goods within a reasonable time.

3. A stipulation in the receipt given by the carrier at the time of the shipment, as to the value of the goods shipped, is not binding upon the owner unless expressly agreed to by him; and in the event of a breach of the contract of carriage by the carrier, he is entitled to recover full damages as shown by the evidence, regardless of such statement as to the value of the goods.

4. In a suit against a carrier for failure to deliver goods in a reasonable time, the measure of damages is that prescribed by the Civil Code, § 2319; and where the evidence shows that at the time of the actual delivery the goods had been rendered valueless by the negligent delay of the carrier, a recovery for the full value of the goods when and where they should have been delivered will be upheld. Hutch. Carr. (3d ed.)

sec. 651; *East Tenn. R. Co.* v. *Johnson*, 85 *Ga.* 497; Schulze v. Great
Eastern R. Co., 19 Q. B. Div. 30 (30 Amer. & Eng. R. Cases, 134).
5. There was no error of law committed, and the finding of the judge, act-
ing without the intervention of a jury, was fully supported by the facts.

Appeal, from Richmond superior court—Judge Hammond.
March 3, 1906.

Argued February 4,—Decided February 25, 1907.

*F. G. duBignon, Frank H. Miller, William K. Miller,* for plain-
tiff in error.   *James C. C. Black Jr., John M. Graham,* contra.

HILL, C. J.   J. H. O. Briggs brought suit against the Southern
Express Company in the justice's court of the 600th district, G.
M., by summons with sworn account attached, dated May 15, 1905,
for "seventy pounds of fancy, select, Augusta rattlesnake water-
melon seed, at eighty cents per pound, $56.00." The defendant
filed a general and special demurrer to the plaintiff's summons and
bill of particulars, upon the following grounds:   (1) Because the
court is without jurisdiction in the premises, in this, that it is a
suit for a tort, with a waiver of the tort, and a claim asserted for
damages in an increased valuation of the property shipped.   (2)
Because the bill of particulars fails to set out with a sufficient de-
gree of certainty the plaintiff's cause of action against the defend-
ant, particularly in this:   (*a*) Where the liability occurred.   (*b*)
What was the name of the agent of the defendant with whom the
plaintiff dealt in delivering or selling to the defendant seventy
pounds of watermelon seed.   (*c*) It does not state the place of
shipment or delivery of the goods, by whom or to whom, and the
value fixed thereon at the time of the shipment.   (*d*) It does not
set out any contract of shipment, or agreement under and by vir-
tue of which the property described in the bill of particulars came
into defendant's possession." The defendant also filed a plea
covering the points made by the above demurrer, and setting up
other defenses which will appear further on in this opinion, in the
decision of the questions made. By consent, an appeal was en-
tered to the superior court of Richmond county, and in that court
it was agreed that the judge thereof, without a jury, should pass
upon and decide all questions raised by the pleadings, under an
agreed statement of the facts.

The material facts as stipulated are as follows: The defend-
ant is a corporation of this State, having many offices in the State

of South Carolina,.and on May 4, 1905, received from O. D. Hammond, at Blackville, S. C., a package of watermelon seed, "C. O. D.," valued at $25, consigned to J. H. O. Briggs (the plaintiff) at Kingstree, S. C. For said shipment the consignor received the usual receipt from the defendant company, agreeing to forward and deliver the package to the consignee, charges to be paid by the consignee. The defendant company forwarded the watermelon seed from Blackville, and the same were received at Kingstree on May 6, 1905. On May 8, 1905, the plaintiff, the consignee, called at the office of the defendant company at Kingstree for the seed, ascertained that the shipment was a "C. O. D." shipment, and that the seed were valued at $25. The plaintiff then and there notified the agent at Kingstree that the seed were his, and that the C. O. D. shipment was an error, and requested him to notify defendant's·agent at Blackville of the error, and to have the same corrected at once, as plaintiff desired the seed to plant, to raise a watermelon crop for that·season; the agent at Kingstree promised to communicate with the agent at Blackville at once, but stated he could not deliver the seed to the plaintiff until directed by the agent at Blackville to release the "C. O. D." shipment. Plaintiff offered to pay the express charges, but declined to pay the "C. O. D." charges, stating to the agent that the seed were his property, and that O. D. Hammond, the consignor, had no interest in the seed. The plaintiff notified E. S. Hammond, the father of the consignor, on May 8, 1905, of the error in the shipment, and requested him to communicate with the agent at Blackville, and to have said "C. O. D." shipment released; the consignor on May 9, 1905, notified the defendant's agent at Blackville that the "C. O. D." shipment was an error, and the seed were the property of the consignee, the plaintiff; and defendant's agent at Blackville promised to communicate at once with the agent at Kingstree and have said shipment released from the "C. O. D." The said O. D. Hammond called again on the agent at Blackville, on May 20, 1905, and ascertained that said shipment had not been released, and again directed the agent to have said shipment released from the "C. O. D." The agent of the defendant company at Blackville failed to notify defendant's agent at Kingstree of said mistake of the shipment until May 30, 1905. It takes a day for a letter· to go from Blackville to Kingstree, South Carolina. The

plaintiff called on the agent of the defendant company on the 12th and 13th days of May, 1905, to ascertain if said shipment had been released, and, on May 12, 1905, showed the agent a postal card from E. S. Hammond, the father of O. D. Hammond, the consignor, in which he stated that said "C. O. D." shipment was an error, and that he had notified the agent at Blackville to rectify the error.

Before the letter of instruction from the agent at Blackville was received by the agent at Kingstree, the plaintiff left instructions orally with the agent at Kingstree to forward the package of seed to him at Augusta, Ga. The plaintiff reached Augusta on May 14, 1905, and called at the defendant's office several times during May for said shipment. The shipment did not reach Augusta until June 1, 1905, when the same was tendered to the plaintiff, who declined to receive it, on the ground that said shipment had been delayed so long that he could not use the seed for the purpose he had intended, to wit, for the purpose of planting the same that season. The watermelon seed were the property of the plaintiff, and the value thereof in Augusta at retail was 80 cents per pound, and 50 cents per pound at Blackville and Kingstree. The shipment in this case was made pursuant to written instructions of E. S. Hammond as follows: "Express melon seed C. O. D., $25.00." This written memorandum was left by Wallace Brooks, colored servant, who brought the seed to the express office for shipment. The original receipt given by the company on the delivery of the package was never returned or tendered to the company for cancellation or alteration, nor was the same requested. When the plaintiff at Kingstree ordered the seed shipped to Augusta, the express agent states that the plaintiff told him that he would keep them over until next season, as they would keep two years and be all right. Plaintiff's statement is, that "having decided not to plant the seed at Kingstree, on account of the land not being just what I expected, I told the agent to ship the seed to Augusta as soon as he could hear from the agent at Blackville." He probably thinking that he, plaintiff, had decided not to plant them because he had been waiting five days for the seed and could not get them, "the agent asked me if the seed would be good for planting for another year. I suppose I told him that they could be used for next year. On leaving Kingstree, after giving the agent orders

to ship seed to Augusta as soon as he could hear from the agent at Blackville, I went home and immediately began planning to plant these seed as soon as they reached Augusta. I rode to Augusta, nine miles, twice, intending to get the seed, which were not received in Augusta within two weeks after I left Kingstree." Any conflict in the statement of facts was left to the judge, sitting as a jury, to consider and determine, subject to the principles of law applicable thereto.

On the trial of the case, the plaintiff moved to dismiss the demurrer upon the ground that it was a speaking demurrer. The motion was sustained and the demurrer was dismissed on said ground. After hearing argument on the merits of the case, the court entered judgment in favor of the plaintiff for $56, to which decision the defendant excepted, and assigns the same as error. The plaintiff's exceptions are specifically set forth in the bill of exceptions, and may be summarized as follows: (1) The court erred in dismissing the demurrer on the ground that the same was a speaking demurrer; (2) in holding that the justice's court had jurisdiction of the cause of action; (3) in overruling the terms of the written contract for shipment of a "C. O. D." package, and the limitation of liability therein to $25, and in not holding that the liability both on the original shipment and the reshipment was as specified in the receipt, $25; (4) in holding that the tender back to plaintiff of the article shipped was not a compliance with the contract of original shipment and reshipment by the express company; (5) in holding that the measure of damages placed upon the seed was the highest price in the Augusta market, instead of at the points of shipment and arrival, to wit, Blackville and Kingstree, S. C. (6) Because it appears as a matter of fact that the mistake in the shipment was made by the shipper, and that the delay incident to correcting this mistake was the cause of the non-delivery of the seed to the plaintiff in time for the market of 1905; and the shipper was responsible for this delay, and not the company. (7) Because the court found generally against the defendant, when it appeared as a matter of fact, and not disputed, that on May 5, a shipment was made of a package of watermelon seed "C. O. D.," valued $25, and that the plaintiff refused to receive it when it arrived at Kingstree, claimed that there was a mistake, and, because the shipper's mistake was not corrected by

the 15th of May, and the articles delivered to him, held that he could abandon the contract of shipment and sue for goods sold and delivered that day. (8) Because, under the agreed statement of facts, it appeared that there was no sale of watermelon seed from the plaintiff to the defendant; that the suit was for the conversion of the article shipped, the valuation being the highest price the article would bring in the Augusta market; and there could be no recovery, except upon the ground of the conversion. Error was further assigned on the finding of the court because it was contrary to law, being based upon evidence illegally admitted over objection, and without evidence to support it. On this point it appears, from the bill of exceptions, that a motion made by the defendant to exclude from consideration the evidence in the cause, as set forth in the stipulation as to events that had occurred after May 15, 1905, for reasons therein stated, was not ruled upon by the court. The material questions in this case for our determination, although greatly amplified and elaborated in the specific assignments of error, really lie within narrow limits.

1. Did the court err in dismissing the demurrer filed by the defendant, on the ground that it was a speaking demurrer? A speaking demurrer is one that introduces some new fact or averment which is necessary to support the demurrer, and which does not distinctly appear upon the fact of the pleadings demurred to. It will be seen, by an examination of the demurrer in this case, that it falls squarely within this definition of a speaking demurrer. There was nothing in the statement of the plaintiff's cause of action to indicate that it was a suit for a conversion or tort, and the demurrer could not have been sustained without assuming the existence of these facts; and this made it a speaking demurrer. *Clarke* v. *Land Co.*, 113 *Ga.* 22; *Gaines* v. *Bankers Alliance*, Id. 1139; *Beckner* v. *Beckner*, 104 *Ga.* 219; *Teasley* v. *Bradley*, 110 *Ga.* 498.

2. It is insisted that the justice's court did not have jurisdiction of the subject-matter; because the action was one ex delicto. If the cause of action is one in tort, and not in assumpsit, this objection is well founded. It has been frequently held that technical pleading is not required in a justice's court, and that under the Civil Code, §4116, a plaintiff in a justice's court is not required "to allege by petition or otherwise clearly and distinctly his cause

of action. . . It is generally the case, therefore, that in determining whether or not a justice's court has jurisdiction of a suit, it is necessary to look not only to the summons, but to the evidence upon which the plaintiff relies for a recovery." *Williams* v. *George,* 104 *Ga.* 602 (3). In some cases the aggrieved party may have an election of remedies. He may sue in tort, or he may waive the tort and sue in assumpsit. It seems clear to us in this case that the suit was for damages resulting from a breach of the contract made by the defendant to forward the shipment to Augusta and there deliver it within a reasonable time. Where a contractual relation exists between the parties,.such as bailor and bailee, so that the latter rightfully obtains possession of the property, a tort arising out of the bailee's duty imposed by his relation may be waived by the bailor, and assumpsit maintained, the reason being that the relation of the parties, out of which the duty violated grew, had its inception in contract. *Bates* v. *Bigby,* 123 *Ga.* 729; 4 Cyc. 331, 332.

The defendant made a contract to forward the seed and to deliver it at Kingstree, S. C. No specific time was stated for the execution of the contract, but the law implied that the contract would be performed within a reasonable time. The seed reached Kingstree within such reasonable time, and it was there found that a mistake had been made in sending the shipment "C. O. D." The agent of the defendant undertook to correct this mistake, and it appears that the plaintiff also undertook to correct it. Before the correction had been made, the plaintiff notified the defendant's agent at Kingstree that he was going to Augusta, Ga., and directed the agent to reship the seed to him to Augusta when the correction in the shipment was made; and this the agent agreed to do. Therefore it became the duty of the defendant to forward the seed to Augusta, and there deliver it to the consignee within a reasonable time. The cause of action, therefore, arose from the defendant's failure to perform its contract duty to deliver the seed within a reasonable time to the consignee at Augusta. Such cause of action arose ex contractu, and the justice's court had jurisdiction thereof.

3. The plaintiff's right to recover the full value of the seed at Augusta at the time when they should have been delivered was not affected by any stipulation in the receipt given by the defend-

ant at the time of the original shipment. Civil Code, § 2276; *Wood* v. *Southern Express Co.,* 95 *Ga.* 452, and cit. And this would be true whether the shipment to Augusta was under the original contract to deliver the seed at Kingstree, S. C., or whether the shipment from Kingstree was under a new verbal contract made by the plaintiff with the defendant's agent at the former place.

4. The judgment was for the full value of the seed as shown by the evidence; and it is insisted that this was error, because the seed were not lost, and, under such circumstances, the owner must take the seed, and, if damaged, hold the company for the difference in value. The Civil Code, § 2319, gives the measure of damages where a carrier fails to deliver goods within a reasonable time; such measure of damages being the difference between the market value at the time and place they should have been delivered and the time of actual delivery. It is fairly deducible from the evidence that the court adopted this rule in measuring the damages in this case. At the time when the seed were actually delivered in Augusta, they had been rendered entirely valueless to the owner, because the season for planting them had passed, and the owner wanted them to plant for that season. The owner was not compelled to take the seed after the planting season had passed by, and keep them until the return of another season. He was entitled to have them delivered to him within a reasonable time, and during the season for which they were wanted. And he had expressly put the agent of the defendant company on notice of the reason for expedition in making the delivery, when he asked that the mistake in sending the seed "C. O. D." be corrected. Taking into consideration the distance between the point of shipment and the point of destination, and the time required for transportation between these points, it is reasonable to assume from the evidence that the seed should have been delivered in Augusta certainly not later than the middle of May, which would have been, according to the testimony, during the period of the planting season. The testimony is not perfectly clear as to the value of seed in Augusta when they should have been delivered, but the evidence is that they were worth 30 cents per pound in Augusta when shipped; and it was fair to presume that an agricultural product such as watermelon seed did not fluctuate in value, but remained the same

during the entire season of planting. Certainly there could not have been much fluctuation in a product of this kind between the day of shipment and the day when, by the exercise of reasonable diligence, it should have been delivered.

5. It is also insisted that the delay in the shipment was caused by the mistake made by the agent of the owner in sending the shipment "C. O. D.," and that for this the company is not responsible.

We think it immaterial who was responsible for the error in the shipment. When the company's attention was called to the error at Kingstree, by the owner of the seed, it undertook to have the mistake corrected. In thus undertaking, there was an implied obligation to have the error corrected within a reasonable time, in order that the company might fully perform its obligation and deliver the freight to the owner within a reasonable time. It can make no sort of difference that the delay in having the correction made caused the delay in forwarding and delivering the seed to the consignee in Augusta. The carrier recognized the right of the consignee to have the error in the shipment corrected, and it also recognized his right as the owner to have its destination changed from Kingstree to Augusta.

We therefore think that the learned judge who acted both as court and jury committed no error of law, and that his finding was fully warranted by the facts.     *Judgment affirmed.*