## SOUTHERN EXPRESS COMPANY v. HANAW.

1. 'The mere insertion, in a printed form of receipt used by an .express company, of terms limiting its liability, and the delivery of such a receipt to a shipper, without more, will not in this State suffice to make an express contract for the purpose of limiting its liability as a common carrier.

2. Where no value is put upon goods shipped by an express company, and no·effort is made to arrive at a valuation, the mere fact that in the prepared form of receipt used by the company and issued to the shipper there is contained a statement that "the shipper agrees that the value of said property is not more than fifty dollars, unless a greater value is stated herein, and the company shall not be liable in any event for more than the value so stated, nor for more than fifty dollars if no value is stated herein," will not suffice to limit the liability of the company to fifty dollars, regardless of the value of the property shipped. Such a statement in the receipt is not a valuation, but an arbitrary limitation sought to be placed upon the extent of the liability of the common carrier.

3. While a bona fide agreement may be made as to the value of property to be transported, as a basis for fixing the charges, and may be valid, yet a common carrier can not, even by express contract, put an arbitrary limitation upon its liability for damages arising from negligence of its agents. Such a contract is contrary to public policy.

4. If goods are shipped in one State on a through contract, to be transported by a common carrier and delivered in another, (omitting any question of public policy) the general rule is, that, in the absence of anything to show a contrary intent, the validity, form, and effect of the contract of shipment will be determined by the laws of the State where the contract was made and partly to be performed.

5. If goods are shipped for transportation by connecting common carriers from New York to a point in this State, and suit is here brought for damages arising from delay in delivering them by the final carrier after arrival, whether or not the delivery and taking of the shipping receipt constituted a contract by the shipper with the initial carrier will be determined by the laws of New York, if they be shown.

(a) In so far as stipulations of such contract (if it be such) limit the common-law liability of the carrier as an insurer, or for losses occurring by unavoidable accident, they will be enforced by the courts of this State; but in such a case, it being contrary to the public policy of this State to allow a common carrier, even by express contract, to make an arbitrary limitation upon its liability for negligence of its agents ·or servants, stipulations to that effect will not be enforced.

6. The mere fact that an express company to which is delivered goods for shipment gives to the shipper a receipt which contains a stipulation that, in the absence of valuation, the company's liability shall be limited to a certain amount, and the taking of such a receipt by the shipper, without more, does not constitute a fraud on his part which will relieve the carrier from liability for damages.

7. Where a party seeks to rely on the law of another State as furnishing the basis for a right of recovery or defense different from what it would be under the laws of this State, or the common law, the law of such foreign State should be pleaded and proved.

8. If the point were distinctly made for decision, it would seem that the Federal interstate-commerce law could not be held to render valid an arbitrary limitation upon the liability of a common carrier for damages arising from negligence of its servants, stated in a shipping receipt given when the shipment commenced, so as to be binding in the State where the goods were to be delivered, and where suit was brought, although contrary to public policy and void according to the laws of such State.

9. In an action for damages on account of delay by a common carrier in delivering goods, it was error to admit evidence of the profit which the plaintiff would have made by selling such goods if he had received them promptly, after proof only of the shipment and the delay in delivery.

10. The general rule is that the measure of damages for unreasonable delay by a common carrier in delivering goods is the difference between their market value when they should have been delivered and their market value when they were delivered, with interest from the former date, less the freight, if unpaid.

(*a*) No special expense was shown to have been incurred by the shipper or consignee on account of the delay.

11. Delay in the delivery of goods by a common carrier will not authorize the consignee to reject them upon their arrival, and recover their full value from the carrier. His remedy is to sue for the damages he has sustained by reason of the delay.

APRIL 27, 1910.

Action for damages. Before Judge Mitchell. Thomas superior court. February 15, 1909.

L. B. Hanaw brought suit against the Southern Express Company for a delay in delivering certain goods which were sent by express from New York to Thomasville. The initial carrier was the Adams Express Company. The plaintiff bought the goods and had them shipped to him. The receipt given in New York had at its head the statement: "The company's charge is based upon the value of the property, which must be declared by the shipper." It contained the following: "Received from.............One Co Pa   Valued at $............Marked L. B. Hanaw, Thomasville, Ga., which the company agrees to carry upon the following terms and conditions, to which the shipper agrees, and, as evidence thereof, accepts this bill of lading. 1. In consideration of the rate for carrying said property, which is regulated by the value thereof and is based upon a valuation of not exceeding fifty dollars unless a greater value is declared, the shipper agrees that the value of

said property is not more than fifty dollars, unless a greater value is stated herein, and that the company shall not be liable in any event for more than the value so stated, nor for more than fifty dollars if no value is stated herein. 2. If the Express Company has not an agency at the point of destination, it shall carry the property to its agency nearest or most convenient thereto, and there notify the consignee or deliver the property to some other carrier to continue the transportation. . The Adams Express Company shall not be liable for loss or damage occurring after such delivery, nor for detention after having tendered the property to a connecting carrier. . . 9. The terms and conditions of this contract shall apply to any forwarding or return of said property, and shall enure to the benefit of every carrier to whom the same may be entrusted to complete the transportation." Following the signature of the company's agent at the bottom of the receipt were these words: "Liability limited to $50 unless a greater value is declared." The defendant demurred to the petition, and also filed an answer. It admitted that the goods were shipped on September 13, and reached Thomasville on September 19, and alleged that they were tendered to the plaintiff early in December, but he refused to receive them. In explanation of the delay the defendant alleged, that the goods were insufficiently and improperly packed, and it became necessary to repack them for their protection; that this was done by placing them in a box, but the direction was so defective on the package that the person making the transfer thought the name was S. B. Howard instead of L. B. Hanaw, and so marked the box; that the weight of the box was 76 pounds, while the weight of the package alone was only 50 pounds; that by reason of this the box was not recognized on arrival as being the shipment called for by the way-bill, and the delay in identifying the package and making delivery resulted therefrom. Defendant alleged that the stipulation in the receipt limiting liability to the sum of $50 was binding under the laws of New York, where the contract of shipment was made, and there could be no recovery for any greater sum. It is unnecessary to set out the evidence. The jury found for the plaintiff $257.53. Defendant moved for a new trial, which was refused, and it excepted.

J. H. Merrill and McDaniel, Alston & Black, for plaintiff in error. Theodore Titus and W. H. Hammond, contra.

LUMPKIN, J. (After stating the foregoing facts.)

This was a suit against the Southern Express Company to recover damages for delay in delivering goods shipped from New York to Georgia, the Adams Express Company being the initial carrier, and issuing the receipt. The goods reached the point of destination, but there was delay in delivering them. It appears from the record, that, during the charge, the court inquired of counsel for defendant if he admitted liability to the extent of fifty dollars, and counsel replied that he did, and tendered that amount and the goods, which were in the defendant's hands. The court thereupon charged on the basis that some liability was admitted. The question was thus one as to the effect of the stipulation in the express receipt, and as to the measure of damages. It did not appear at what point or in what condition the goods were delivered to the defendant, nor was any question made as to that, the defendant relying on·the terms of the receipt.

1-3. It is declared by the Civil Code, § 2276, that "A common carrier can not limit his legal liability by any notice given, either by publication or by entry on receipts given or tickets sold. He may make an express contract and will then be governed thereby." It is well settled that a mere inclusion by a common carrier, in a bill of lading or receipt for goods, of a provision for limiting his liability, and the reception thereof by the shipper, will not serve in this State to create an express contract within the meaning of the section of the code quoted. In some States it has been ruled that the shipper's acceptance of a receipt which contains a limitation of liability will suffice to show an assent to its terms and constitute an agreement, whether he reads the receipt or not. But such is not the law in Georgia. *Southern Express Company* v. *Newby,* 36 *Ga.* 635 (91 Am. D. 783) ; *Southern Express Co.* v. *Barnes,* 36 *Ga.* 532. In one or two of the cases such expressions were used as that the carrier must make an express contract, independent of his receipt, or outside of his receipt. This negatived the idea that the inclusion of limitations on liability in the receipt delivered to the shipper and his mere acceptance of it constituted an express contract; but it did not hold that the parties might not use the terms set out in the receipt as a basis on which an express contract could be made. Thus where a special contract was incorporated in a bill of lading, which was signed by both parties, upon a consideration this

was held to be sufficient. *Georgia Railroad* v. *Spears*, 66 *Ga.* 485 (42 Am. R. 81). At last, however, it must be an express contract. *Purcell* v. *Southern Express Co.*, 34 *Ga.* 315; *Central R. Co.* v. *Hasselkus & Stewart*, 91 *Ga.* 382 (17 S. E. 838, 44 Am. St. R. 37); *Georgia R. Co.* v. *Gann & Reaves*, 68 *Ga.* 350; *Central of Georgia Ry. Co.* v. *Lippman*, 110 *Ga.* 665 (36 S. E. 202, 50 L. R. A. 673). In *Kavanaugh & Co.* v. *Southern Ry. Co.*, 120 *Ga.* 62, 66 (47 S. E. 526), the expression was used that if the contract had been executed in Georgia it would not be binding unless "signed" by the shipper. This was doubtless an inadvertence, meaning that there must be an express agreement by the shipper, the most ordinary method of showing such agreement being by signing. Considered as a limitation upon liability, it is clear that the provision contained in the receipt now before us, that, in the absence of valuation by the shipper, the liability should be limited to fifty dollars, would not be valid or binding as a Georgia contract. If it be contended that this provision in the receipt amounted to an actual valuation of the property shipped, it will not suffice for that purpose in this State. A common carrier may, as a basis for fixing its charges and limiting the amount of its corresponding liability, make with the shipper a contract of affreightment embracing an actual and bona fide agreement as to the value of the property to be transported; and in such case the latter, when loss, damage, or destruction occurs, will be bound by the agreed valuation. But it must be a bona fide agreement as to valuation, not a mere insertion in a receipt by a carrier, that, in the absence of such agreement or valuation, an arbitrary limitation is fixed by the carrier.

It will be noted that by the terms of the receipt the express company does not even concede that the valuation is fifty dollars, or fix that amount as the value, but declares that, in the absence of a valuation, it shall not be liable "for more than fifty dollars if no value is stated herein." Whether it will admit liability to that extent or claim that the goods were worth less is left open. At the bottom of the receipt is also an entry stating: "Liability limited to $50 unless a greater value is declared." In the place prepared for inserting an actual valuation are the words "Valued at $———." Taking these portions of the prepared form of receipt together, it seems quite clear that a place was left blank for inserting an actual valuation, but this was not used; and instead of relying on an

actual valuation, the carrier declared in the receipt that, in the absence thereof, its liability should be limited so as not to be *more than* a certain amount, regardless of the value of the goods or articles shipped. How could this be said to be a bona fide effort to value, or arrive at the value of the particular goods which were shipped in the present case? The decision in Hart *v.* Pennsylvania R. Co., 112 U. S. 331 (5 Sup. Ct. 151, 28 L. ed. 717), and cases following it, are relied on. In that case horses were shipped by a railroad company under a bill of lading, signed by the shipper, which stated that the horses were to be transported "upon the following terms and conditions, which are admitted and accepted by me as just and reasonable." Among these was to pay the freight at a specified rate "on the condition that the carrier assumes a liability on the stock to the extent of the following agreed valuation, . . if a chartered car, on the stock and contents in same, twelve hundred dollars for the car-load." Such a bill of lading, signed by both parties, and in which the carrier assumed liability to the extent of an "agreed valuation," made a much stronger case in regard to fixing an actual valuation than the mere statement in the receipt now under consideration. But this court, in *Central Ry. Co.* v. *Murphey,* 113 *Ga.* 514, 519 (38 S. E. 970, 53 L. R. A. 720), discussed the case of Hart *v.* Pennsylvania R. Co., and differentiated it from a case involving a bill of lading which stipulated, that, "In consideration of the reduced rates specified above, it is mutually agreed that the value of fruit shipments under this bill of lading shall be taken at not exceeding $500.00 per car-load; vegetable shipments, $200.00 per car-load; melon shipments, $85.00 per car-load; and the carrier shall in no event be liable for any greater sum in case of total loss or destruction." It was doubted whether the additional provision involved in the Hart case created an actual agreement as to valuation. It will be seen that the stipulation in the bill of lading considered in the case of *Central Ry. Co.* v. *Murphey,* just cited, undertook to declare an agreement in the absence of a mutual agreement, as does the express receipt now before us. In *Georgia Southern Ry. Co.* v. *Johnson,* 121 *Ga.* 231 (48 S. E. 807), shippers sent candy to a railroad for transportation. It was in boxes, and the contents were unknown to the company. Candy could be shipped in either of two classes, having different freight rates. The shippers classified that which they were

shipping as of a lower grade, and thus prepared shipping tickets, using a form containing the words "candy released six cts. per pound valuation," and on this the railroad received the goods and the shippers obtained a lower rate of freight. After damage or loss, they were estopped from claiming to recover at a higher valuation than that thus fixed by them. In *Central of Ga. Ry. Co.* v. *City Mills Co.,* 128 *Ga.* 841 (58 S. E. 197), the principles announced in this opinion were recognized; but where a shipper, which did a large amount of shipping over a railroad, with the assent of the railroad company prepared and had printed for itself a blank form of shipping receipt which included the words, "as per conditions of Company's bill of lading," and the shipper's agent who prepared the form intended to make it subject to the conditions in the company's regular bill of lading, and the meal which was involved in the controversy was loaded on a car by the shipper, and the receipt was made out by its agent and presented to the agent of the railroad company for signing, it was held that this amounted to an express agreement by the shipper to the terms thus prepared by its agent and tendered to the railroad company's agent for signature as containing the contract. No question was made or discussed as to a consideration or as to any term of the contract being contrary to public policy. Neither of the two cases last cited at all conflicts with what has been said above. .

A common carrier can not, even by express contract, limit its liability for damages arising from negligence of its agents. The section of the code quoted at the beginning of this opinion has not been construed as intending to authorize such a limitation. *Central of Georgia Ry. Co.* v. *Hall,* 124 *Ga.* 322 (52 S. E. 679, 110 Am. St. R. 170, 4 L. R. A. (N. S.) 898). It was there said that "The requirement of diligence on the part of a common carrier is one involving public policy, and it would be contrary to such policy to allow him to relieve himself from his duty in this regard by contract. A common carrier can not, therefore, by special contract exempt himself from liability for loss of goods intrusted to him, where the loss arises from his own negligence." A number of previous decisions of this court were cited in support of this statement, including *Georgia Railroad Co.* v. *Gann & Reaves,* 68 *Ga.* 350, 353, and *Georgia Railroad & Banking Co.* v. *Keener,* 93 *Ga.* 808 (21 S. E. 287, 44 Am. St. R. 197). In the latter case the dis-

tinction between actual valuation of the property to be shipped and an arbitrary limitation upon value, amounting to an effort to limit liability for negligence, was clearly recognized.

In the Kensington, 183 U. S. 263, 268 (22 Sup. Ct. 102, 46 L. ed. 190), involving a transportation of baggage from Antwerp to New York, with stipulations in the passenger's ticket for limitation of liability for damages arising from negligence, which would have been valid by the Belgian law, Mr. Justice White said: "It is settled in the courts of the United States that exemptions limiting carriers from responsibility for the negligence of themselves or their servants are both unjust and unreasonable, and will be deemed as wanting in the element of voluntary assent; and, besides, that such conditions are in conflict with public policy." The doctrine of public policy as applicable to such a case was fully discussed (pp. 269 et seq.). See also Railroad Co. *v.* Lockwood, 84 U. S. 357 (21 L. ed. 627); Grogan & Merz *v.* Adams Express Co., 114 Pa. 523 (7 Atl. 134, 60 Am. R. 360); Adams Express Co. *v.* Stettaners, 61 Ill. 184 (14 Am. R. 57); 5 Am. & Eng. Enc. Law (2d ed.), 308, 333.

It has been held in Pennsylvania, that a carrier has a right to make inquiry, and to have a true answer as to the nature and character of goods, but that if he makes no inquiry and no artifice is used to mislead him, he is responsible for any loss, however great the value may be; and the duty to state the nature and value of property is not on the shipper, in the absence of inquiry, and in the absence of fraud or artifice on his part. Camden & Amboy R. Co. *v.* Baldauf, 16 Pa. 67 (55 Am. D. 481); Relf *v.* Rapp, 3 Watts & S. 21, 26 (37 Am. D. 528); Story on Bailments, 567. Our own code (Civil Code, § 2290) declares that "The carrier may require the nature and value of the goods delivered to him to be made known, and any fraudulent acts, sayings, or concealment by his customers will release him from liability." This contemplates a requirement by the carrier, not a general duty on the part of the shipper to disclose, without such requirement. In the *Keener* case, supra, weight seems to have been given to the fact that no inquiry was made by the carrier.

4, 5. It was contended that if the insertion in the receipt of the express company of the clause in regard to limiting the value in the absence of actual valuation did not amount to an express contract

in Georgia, nevertheless it was a valid contract in New York, where the shipment originated and where the receipt was issued, and should therefore be enforced in this State. The doctrine that the lex loci contractus will generally determine the validity and effect of a contract is well recognized. Cases of shipments beginning in one State and terminating in another have given rise to many conflicting adjudications. Sometimes the contract is partly to be performed in one State, and partly in another where the delivery takes place. Sometimes goods are transported through several different States before reaching the point of delivery. Sometimes the initial carrier contracts for a through shipment; sometimes only to deliver to the next carrier. Without entering into a discussion of the many varying decisions, or of peculiar circumstances making exceptional cases, the general rule may be said to be that if the contract is one of through shipment entered into in one State where its performance begins, although a delivery is to be made in another State, in the absence of anything to show a contrary intent, the law of the State where the contract was made and the carriage begun will be treated as the lex loci contractus, and the contract will be governed by it. This rule, however, is subject to the limitation that a State will not enforce a contract which is contrary to its public policy. By the Civil Code, § 8, it is declared: "The validity, form, and effect of all writings or contracts are determined by the laws of the place where executed. When such writing or contract is intended to have effect in this State, it must be executed in conformity to the laws of this State, excepting wills of personalty of persons domiciled in another State or country." Section 9 declares that "The laws of other States and foreign nations shall have no force and effect of themselves within this State, further than is provided by the constitution of the United States, and is recognized by the comity of States. The courts shall enforce this comity, until restrained by the General Assembly, so long as its enforcement is not contrary to the policy or prejudicial to the interests of this State." Section 3668 declares that "A contract which is against the policy of the law can not be enforced." Under section 8, if the contract were to be wholly performed in this State, it would have to be made in accordance with the laws thereof. Considering this as a contract originating in another State, and there to be partly performed, the laws of that State must be considered in respect to

its validity as a contract. But under the other two sections cited, the doctrine of comity in applying the law of another State to such a contract is limited by the fact that this State will not enforce the law of another State giving validity to a contract of a common carrier there made, but with part performance and delivery to be made here, which is contrary to the public policy of this State.

In Alabama Great Southern R. Co. *v.* Little, 71 Ala. 611, it was said that a common carrier may, by special contract, limit or qualify his liability as an insurer, or his common-law liability for losses occurring by unavoidable accident; "but public policy and every consideration of right and justice forbid that a common carrier should be allowed to stipulate for exemption from, or limitation of, his liability for losses or injuries occurring through the want of his own skill or diligence, or that of the servants or agents he may employ, or through his or their willful default or tort." This was said in a case where a shipment was made from Cincinnati, Ohio, to a point in Alabama, and where the bill of lading was issued by the initial carrier. Such was also the shipment involved in Louisville & Nashville R. Co. *v.* McGuire & Co., 79 Ala. 395. In Union Locomotive and Express Co. *v.* Erie Ry. Co., 37 N. J. L. 23, 25, it was said: "A contract valid elsewhere will not be enforced if it is condemned by positive law, or is inconsistent with the public policy of the country, the aid of whose tribunals is invoked for the purpose of giving it effect." See also Thomson *v.* Taylor, 65 N. J. L. 107 (46 Atl. 567). In Southern Express Co. *v.* Rothenberg, 87 Miss. 656 (40 So. 65, 112 Am. St. R. 466), goods were shipped from New York to Mississippi, and were destroyed in a wreck. Suit was brought in the latter State. It was held that a limitation similar to that now involved was contrary to public policy and would not be enforced. The ground for holding that even an express contract seeking to relieve a common carrier from liability for negligence will not be enforced being that it is contrary to public policy, comity, which is at last the foundation of the doctrine of enforcing the lex loci contractus, will not compel the courts of this State to violate its public policy and to enforce a contract which would have such effect, as to property to be brought into this State by a common carrier and here delivered, certainly not as to injury resulting from negligence here committed, merely because the contract was made beyond its borders. A contract of carriage, as to ship-

ments into Georgia, which is not contrary to the public policy of this State can be enforced here, if valid under the laws of the State where it was made and the carriage was begun, although it might not have been a complete or binding contract if executed in Georgia.

We are aware of the fact that there are rulings contrary to that here made. But in some of the decisions the question of public policy was apparently not raised or considered. The Supreme Court of Massachusetts differs directly with the Supreme Court of the United States on the subject of public policy, and holds that a contract of a common carrier, valid at the lex loci contractus, will be enforced in Massachusetts, where the carriage terminates, although contrary to the public policy of that State. Fonseca v. Cunard Steamship Co., 153 Mass. 553 (27 N. E. 665, 12 L. R. A. 340, 25 Am. St. R. 660). The same court has, however, held that whether the receipt, by the shipper, of a contract signed only by the carrier will show an assent by the shipper to its terms is to be determined by the lex fori,—a ruling which can not be reconciled with the current of authority. Hoadley v. Northern Transportation Co., 115 Mass. 304 (15 Am. R. 106). In Ohio a contract made in another State in regard to a shipment into that State was held not to relieve the carrier from the result of its negligence, although it would have had that effect in the State where it was made. The decision was, perhaps somewhat inaccurately, placed upon the ground that the law of the place of delivery generally would be applied, rather than on the distinct ground that the contract was contrary to public policy. The question whether the inclusion of certain terms in a bill of lading or express receipt and its delivery to the shipper is sufficient to constitute a contract between him and the carrier is one thing; the question whether, if it be conceded that according to the lex loci contractus this is sufficient to make a contract, it is violative in all or some of its terms of the public policy of the State where the delivery is to be made, and the contract is sought to be enforced, is quite another thing. Apparently in New York the extent of the liability of a common carrier, though arising from negligence, may be limited. Belger v. Dinsmore, 51 N. Y. 166 (10 Am. R. 575) ; Magnin v. Dinsmore, 62 N. Y. 38 (20 Am. R. 442) ; Kirkland v. Dinsmore, 62 N. Y. 171 (20 Am. R. 475). But contrast Curtis v. Delaware etc. R. Co., 74 N. Y. 116 (30 Am.

R. 271), where baggage was delivered at Scranton, Pennsylvania, for carriage to the city of New York and delivery there, and was lost after arriving in New York. It was said by the Supreme Court of Alabama, in regard to the New York ruling in Magnin *v.* Dinsmore, 70 N. Y. 410 (26 Am. R. 608) : "The case belongs to that class of cases in the New York courts, reviewed in Railroad Company *v.* Lockwood, 17 Wall. 357 [21 L. ed. 627], which holds that common carriers may stipulate for exemption from liability for the negligence of themselves or their servants. That rule has not prevailed in this court; on the contrary, we have adhered to the doctrine that a contract by which a carrier undertakes to limit his common-law responsibility can not be employed to relieve him from losses or damages resulting from his negligence." Alabama Great Southern R. Co. *v.* Little, 71 Ala. 611, 616.

The distinction between contracts relieving a common carrier from liability not arising from negligence, and those which seek to relieve it in whole or in part from liability arising from negligence, has been recognized in this State. In *Western & Atlantic R. Co.* v. *Exposition Cotton Mills*, 81 *Ga.* 522 (7 S. E. 916, 2 L. R. A. 102), machinery was shipped from Massachusetts to a point in this State. In the bill of lading it was stipulated that the railroad company should not be held liable for "any loss or damage arising from the following causes, viz., fire from any cause, on land or water, . . explosions, accidents to boilers and machinery, . . insufficiency of package in strength or otherwise, rust, dampness," etc. It appeared that, while this stipulation in the bill of lading would not have constituted an express contract with the common carrier, under the Georgia law, it was a good contract in Massachusetts. In so far as it sought to relieve the carrier from liability other than that arising from its own negligence, it was held enforcible in Georgia. But Simmons, J., said : "Of course none of the carriers could exempt themselves from liability arising from their own negligence. Although the goods were shipped at the owner's risk, and the carriers were not to be liable for damages caused by weather or rust, still if the damage was caused by the weather or rust, occasioned by the negligence of the carrier or by unreasonable delay upon the road, the carrier guilty of the negligence would be liable. . . The carrier should be held liable only for his own negligence, or for the damage caused by its unreasonable detention on the road."

In *Wood* v. *Southern Express Co.*, 95 *Ga.* 451 (22 S. E. 535), the express receipt involved contained a stipulation that if the value of the property was not stated at the time of the shipment, and specified in the receipt, the holder thereof would not demand of the company a sum exceeding fifty dollars for loss or damage to the shipper. No value was specified in the receipt, but the actual value shown by the evidence was more than fifty dollars. A recovery was had. The presiding judge ordered that a new trial should be granted unless the plaintiff would write off from the verdict an amount sufficient to reduce it to fifty dollars. It was held, that, "Treating this stipulation as an attempt to limit the liability of the carrier, it was ineffectual, because it does not appear that the shipper expressly assented to it; . . and even if he had agreed to it, the stipulation would not be valid as to loss involving negligence on the part of the carrier." It was said that in no view of the case, therefore, was the court warranted in the direction given as to the amount of the verdict. It does not appear in the published report where the shipment originated and what was the point of delivery. But the record on file in the office of the clerk of this court shows that the package was shipped at Selma, Alabama, to be delivered at Macon, Georgia. While the Supreme Court of Alabama holds that a common carrier can not limit its liability for negligence, the decision was not based on the law of that State, but solely on the ground that such a contract was not allowed to be enforced by the law of Georgia. The terms of the contract which were held valid under the New York law, and enforcible in this State, in *Kavanaugh* v. *Southern Ry. Co.*, 120 *Ga.* 62 (47 S. E. 526), did not limit liability arising from negligence. No question of public policy was raised, and the receipt of the bill of lading in New York, containing certain stipulations, was only treated as having the same effect as if the shipper had expressly assented thereto. In *Wallace* v. *Sanders,* 42 *Ga.* 486, the question of public policy was not considered; and that case was one involving loss growing out of the disorganized condition of affairs during the civil war, and damage claimed to have been done by members of an army. (See p. 491.) Nor is the decision in *Southern Ry. Co.* v. *Parramore,* 119 *Ga.* 690 (46 S. E. 822), in conflict with the ruling now made. The suit there was brought on a special contract signed by the shipper. There was no question of public policy as to any of its terms. See

also *Central of Georgia R. Co.* v. *Lippman,* supra; The Kensington, 183 U. S. 263 (22 Sup. Ct. 102, 46 L. ed. 190) ; Bank of Kentucky *v.* Adams Express Co., 93 U. S. 174 (23 L. ed. 872) ; Express Co. *v.* Kountze, 75 U. S. 342 (19 L. ed. 457) ; Conover *v.* Pacific Express Co., 40 Mo. App. 31; Railway Co. *v.* Wynn, 88 Tenn. 320 (14 S. W. 311) ; United States Lace Curtain Mills *v.* Oceanic Steam Navigation Co., 145 Fed. 701; Northern Pac. Ry. Co. *v.* Kempton, 138 Fed. 992, 998 (71 C. C. A. 246) ; Chicago, B. & Q. R. Co. *v.* Gardiner, 51 Neb. 70 (70 N. W. 508) ; Southern Express Co. *v.* Seide, 67 Miss. 609 (7 So. 547) ; 42 Am. & Eng. R. Cas. 398; Hughes *v.* Penn. R. Co., 202 Pa. 222 (51 Atl. 990, 63 L. R. A. 513, 97 Am. St. R. 713) ; *Southern Express Co.* v. *Briggs,* 1 *Ga. App.* 294 (57 S. E. 1066) ; Story on Conflict of Laws (8th ed.), § 244; Wharton on Conflict of Laws (2d ed.), §490; 4 Elliott on Railroads (2d ed.), § 1506, p. 212.

6.   It was urged that the shipper was guilty of a fraud upon the carrier.   But we fail to see how the mere acceptance of a receipt containing printed words by which the carrier sought to limit its liability in the absence of valuation would constitute fraud on the part of the person to whom it was delivered.   In some jurisdictions it would be held to create a contract.   But we have found no case in which it has been held to constitute a fraud by the shipper.   In the cases in this State where the shipper was held to be guilty of fraud, there was either some direct misrepresentation made, or artifice employed, or something done which was calculated to mislead the carrier or throw him or his agent off his guard as to the nature or character and value of the property.

7.   The court was requested to charge, that the contract of shipment was made in New York, and ought to be construed as to its validity and effect by the laws of that State; that the Georgia courts were bound, in construing contracts made in another State, by the construction placed upon the common law even, by the highest courts in that State, as shown by its published reports; and that, as the contract under consideration limited the amount of liability of the carrier to fifty dollars, as shown in the receipt sued on, this limitation was binding upon the shipper.   It does not appear from the brief of evidence that it was proved what was the law of New York.   Probably we might have dismissed this contention for the reason that the presiding judge is not required to

charge as to matters not in evidence, and if a law of another State is relied on as a basis for the finding of a jury, it ought to be proved. But, as the question of the effect of the laws of different. States on the subject of limiting liability has been discussed above, and is also argued under the general grounds of the motion for a. new trial, we have preferred to consider the subject more broadly.

8. It was contended in the brief of counsel for plaintiff in error that the interstate-commerce law of the United States had the effect of abrogating the ruling that limitations of liability stated in a receipt given by an express company for an interstate shipment would not relieve it from full liability resulting from negligence. We do not find that this point was distinctly made or passed on by the trial court. At any rate, it seems to be without merit. Chicago, Milwaukee & St. Paul Ry. Co. v. Solan, 169 U. S. 133 (18 Sup. Ct. 289, 42 L. ed. 688); Pennsylvania R. Co. v. Hughes, 191 U. S. 477 (24 Sup. Ct. 132, 48 L. ed. 268); In the matter of Released Rates, 13 I. C. C. 550.

9-11. The presiding judge admitted evidence as to the profit which the plaintiff would have made if he had received the goods and sold them. He also charged the jury, in reference to the· measure of damages, as follows: "If you believe that the goods remained in the office of the Southern Express Company here about three months by reason of the negligence of the Southern Express Company to notify the consignee and deliver these goods to him, they are liable to him for the market value of the goods at the time they ought to have been delivered in Thomasville, if the failure was the result of their negligence in not making this delivery." He refused to charge a different measure of damages. These rulings were erroneous. There was no evidence of any special damages, such as expenses incurred. The case rested on the general rule as. to damages for delay by a common carrier in delivering goods.· The general rule is that the measure of damages for unreasonable delay by a common carrier in the delivery of goods shipped is the difference between their market value when they should have been delivered and their market value when they were delivered, with interest from the former date, less the freight, if unpaid. *East Tennessee, Virginia & Georgia Ry. Co. v. Johnson & Shahan*, 85 *Ga.* 497 (11 S. E. 809); *Goodin v. Southern Ry. Co.*, 125 *Ga.* 630 (54 S. E. 720, 6 L. R. A. (N. S.) 1054); 5 Am. & Eng. Enc. L.,

(2d ed.) 384. The plaintiff was not entitled to·recover estimated profits. *Cooper* v. *Young*, 22 *Ga.* 269 (68 Am. D. 502). Mere unreasonable delay in transporting does not amount to conversion, so as to authorize the consignee, upon the arrival of the goods, to reject them and sue for their full value. His remedy is to sue for the damages he has sustained by reason of the delay. There may be a possible case where the property has ceased to be of any value at all, such as wholly decayed perishable goods. But the present case is not of that character. There was a mere delay and depreciation in value. 4 Elliott on Railroads (2d ed.), § 1710; 2 Hutchinson on Carriers (3d ed.), § 651. For the reasons last indicated the presiding judge erred in overruling the motion for a new trial. Otherwise there was no error in any of the rulings complained of. *Judgment reversed. All the Justices concur.*