### 5971.	LAMB, receiver, *v.* McHAN.

1. Construing the petition as a whole and in the absence of a demurrer complaining of uncertainty as to the nature of the action, it is held that the action was ex delicto, and not ex contractu.
2. Since the bill of lading attached to the plaintiff's petition shows that it

was signed by the carrier's agent alone, and not by the shipper, the plaintiff was not bound by any stipulation therein by which it was sought to limit the liability of the carrier.

3. The measure of damages was the value of the property at destination, less freight charges to that point.

4-8. The verdict was sufficiently supported by the evidence, and there was no error requiring a new trial.

DECIDED SEPTEMBER 9, 1915.

Action for damages; from city court of Waycross—Judge McDonald.   August 15, 1915.

*Bolling Whitfield, J. L. Sweat,* for plaintiff in error.
*Parker & Walker, A. B. Spence, E. R. Smith,* contra.

WADE, J.   1. An action founded upon the failure of a person to perform a legal duty imposed upon him by contract is an action ex delicto.  *City & Suburban Railway* v. *Brauss,* 70 *Ga.* 368; *Turner* v. *Western & Atlantic Railroad,* 69 *Ga.* 827.  "An act and a neglect may be both a breach of a contract and a tort.   In such cases the plaintiff has his election as to whether he will sue ex contractu or ex delicto; but the measure of damages in the two cases is usually different."  *Chappell* v. *Western Railway of Alabama,* 8 *Ga. App.* 787-788 (2), 792 (70 S. E. 208) ; *Brooke* v. *Nashville, Chattanooga & Saint Louis Railway,* 5 *Ga. App.* 253 (62 S. E. 1002).   The petition in the case under consideration clearly indicates (notwithstanding the contract is attached thereto, to show the relationship between the parties out of which arose the damages) that the suit is an action ex delicto; and, in the absence of any demurrer complaining of uncertainty as to the nature of the action, arising from obscurity in the petition, the petition will be held to set forth sufficiently a cause of action ex delicto.   The fact that suit was instituted for the value of a shipment of apples at destination, less the freight to that point, shows that the intention of the plaintiff was to recover for the damage to the shipment. and not to recover damages for breach of the contract.

2.   The receipt given by the initial carrier for the car-load of apples accepted for an intrastate shipment from Ellijay, Georgia, to Waycross, Georgia, was not signed by the shipper, nor does it appear that the various stipulations set out on the back of the receipt and referred to therein were expressly accepted or agreed to by him; and hence these stipulations, in so far as it is attempted thereby to modify the general rights of the shipper under the law

or limit the liability of the carrier, were not binding upon the shipper. *Southern Express Co. v. Briggs,* 1 *Ga. App.* 294 (57 S. E. 1066). The court therefore did not err in declining the request to charge the jury that, in case of loss or damage, the liability of the carrier should be computed upon the basis of the value of the shipment at the time and place of shipment, and that since the plaintiff had not sought to recover under that stipulation in the bill of lading, or upon that measure of damages or basis of value, but on the contrary sought to recover the value of the property at destination, less freight charges, he would not be entitled to recover, and a verdict should be returned in favor of the defendant.

3. The market value of the property at the place of destination, in the absence of any express contract to the contrary, less the freight, would make the measure of damages, and this market value might be determined by the jury (where there was no direct evidence in so many words as to what such market value was on a particular day or at a particular time) from proof of a number of sales and the prices obtained in the market on that day or at that time, from which the jury might legitimately infer the market value. The fact that the plaintiff secured a number of different orders for the apples shipped, to be delivered at Waycross at or about a particular day, to several different persons, might suffice to show the value in that market at that time; and besides, the plaintiff testified positively on direct-examination that he had contracted for the sale of all of the apples at $1.50 per bushel, except about 75 bushels of smaller apples of a different variety, which he had contracted to sell at $1.25 per bushel, the total number of bushels shipped being 481.

4. The court did not err in declining the request to charge that since the plaintiff had specifically alleged his damages to be due to unreasonable delay by the defendant in the transportation of the apples from Atlanta, Georgia, to Waycross, Georgia, if the evidence showed that the defendant received the shipment at a certain hour on a certain Saturday from the initial carrier at its connection in Atlanta, Georgia, and promptly forwarded the same without delay to Fitzgerald, Georgia, where the further transportation was suspended by reason of the intervening of Sunday, on which day the running of freight-trains is forbidden by law, and

the transportation was resumed and completed by bringing the apples to Waycross on the following day, and that there was no unreasonable delay in the transportation by the defendant, their verdict should be for the defendant. The request was altogether too argumentative, and such a charge would have intimated an opinion on the part of the court as to what was or was not negligence. The request was also both unauthorized and inaccurate in view of the presumption of law that the defendant had received the shipment in good order from the connecting line, and in view of testimony tending to show that in such case the apples received in Atlanta, in good order, at .6:35 p. m. on Saturday, October 5, would have reached Waycross, Georgia, in good order on Monday following; there being no testimony to rebut the presumption. It was for the jury to say if there was any negligence or unreasonable delay .between Atlanta and Waycross, and the charge requested would have practically amounted to an adjudication of that question.

5. The court did not err in charging the jury in reference to the transportation of goods over connecting railroads, and that the last company that received the goods "as in good order" would be responsible to the consignee for any damage, open or concealed, done to the goods, and such connecting railroad companies should settle among themselves the question of ultimate liability, etc. Civil Code, § 2752. "A common carrier, sued on its common-law liability for loss or injury of goods received by it for transportation, may relieve itself of liability by showing that the goods were damaged before it received them. Where it does not either appear that the carrier received the goods as in bad order or that they were in fact in bad order when received, the presumption is that they were in good order, and the burden of proof is upon such carrier to show that it was free from negligence, and that its negligence did not cause or contribute to the damage." *Ohlen* v. *Atlanta & West Point R. Co.,* 2 *Ga. App.* 323 (58 S. E. 511). It was for the jury to determine whether this burden was successfully carried by the defendant. This charge was objected to on the ground that it was contrary to the terms of the contract of shipment, "which contract limited the defendant's liability to loss, injury, or damage occurring on its lines only, and none such was proven." Under the ruling made above, the stipulations to

this effect in the contract were not binding upon the plaintiff, because never accepted by him. For the same reason the court did not err in charging the jury that "where a carrier fails to deliver goods in a reasonable time, the measure of damages is the difference between the market value at the time and place they should have been delivered and the time of the actual delivery." Nor did the court err in giving in charge section 2726 of the Civil Code ("A common carrier can not limit his legal liability by any notice given, either by publication or by entry on receipts given or tickets sold. He may make an express contract, and will then be governed thereby"), and in giving in charge in the same connection section 2777 of the Civil Code. Nothing in the evidence or the pleadings discloses that the plaintiff had entered into or expressly assented to any written contract that might have the effect of varying the general rule.

6. An assignment of error in a motion for a new trial that a verdict is contrary to the charge of the court, or to a specified portion thereof, amounts merely to an assignment that the verdict is contrary to law, and, under repeated rulings, presents no legal question for decision. *Roberts* v. *Keeler,* 111 *Ga.* 181 (6), 184-6 (36 S. E. 617); *Wight* v. *Schmidt,* 111 *Ga.* 858 (36 S. E. 937); *Napier* v. *Burkett,* 113 *Ga.* 607 (38 S. E. 94).

7. In case of a strike accompanied with violence and intimidation so as to render it unsafe to forward freight, "the carrier is relieved as to liability for delay in delivering the freight, if the violence and armed resistance is of such character as could not be overcome by the carrier or controlled by the civil authorities when called upon by it." Civil Code, § 2737. There was no plea alleging any strike by way of excuse for the delay in delivery of the car-load of apples, and the provisions relative to strikes, printed on the back of the receipt issued by the initial carrier, as already said, were not binding. Besides, the evidence does not disclose that the civil authorities were called upon to control the violence and armed resistance and failed to control the same "when called upon by it,"—the carrier.

8. The remaining assignments of error are without substantial merit, and the court did not err in overruling the motion for a new trial.                                   *Judgment affirmed.*