1. The defendant was convicted of the offense of rape, the charge being that he did unlawfully have sexual intercourse with a named female child under the age of fourteen years, to whom he had not previously become lawfully married. His sole contention in this court is that there was no evidence that he and the child had not previously become married to each other. Held:
The evidence showing that the child was under fourteen years of age as alleged, it necessarily followed that there could be no lawful marriage to her in this State; and, regardless of all question as to a shifting of the burden of proof, the evidence as a whole — including that as to the tender age of the female, the residence of both the accused and the female in this State, and other circumstances — was sufficient to authorize, even if it did not demand, a finding that they were never married to each other elsewhere. Code, §§ 26-1303, 26-1304, 53-102; Southern Express Co. v. Hanaw, 134 Ga. 445
(7) (67 S.E. 944, 137 Am. St. R. 227); Trustees of Jesse Parker Williams Hospital v. Nisbet, 189 Ga. 807, 811
(7 S.E.2d 737); Reliance Realty Co. v. Mitchell, 41 Ga. App. 124
(152 S.E. 295).
2. The evidence authorized the verdict, and it was not error to refuse a new trial.
Judgment affirmed. All the Justices concur, except Head, J., disqualified.
 No. 15241. OCTOBER 4, 1945. *Page 806 
Lonnie Hickman was convicted of rape, the charge being that he "did unlawfully have sexual intercourse with one Edna Anders, a female child under the age of fourteen years, to whom he had not previously became lawfully married." The jury in their verdict recommended mercy and fixed a period of servitude of not less than one nor more than two years, and sentence was imposed accordingly. The motion for new trial, based on the general grounds only, was overruled, and he excepted.
Callie Knox testified that Edna Anders was born in Toombs County, Georgia, and that: "We are off cousins. Her mother and father are dead. I have raised both of their children, Louise and Edna. They have lived with me about five years, might be a little better, from the death of their parents. . . I have had them ever since that time. I live on First Avenue in the City of Moultrie. I know the defendant on trial, Lonnie Hickman. I have known him ever since I have been in Moultrie. He lives on Second Street in Moultrie, knows these children. When I first came to Moultrie I rented, came here to run a cafe in the Huber Building on the corner, somehow got acquainted with Mr. Lonnie. I had those two little motherless children, and they ask me about the man and I tell them. Well, Mr. Lonnie taken those children, I trusted him with them, he come to me and tell me `let the children come up, I have got some fruit or something' — not thinking, I let them go." According to her testimony, she discovered the defendant's conduct with Edna by reason of blood stain on the girl's underclothing, the manner in which she walked, and her complaints of being sore. When questioned about the garments, the child said, "Yes, Ma, that man he carried me into the room and did it."
The girl testified: "I am nine years old and I am in the fourth grade at school. I know defendant Lonnie Hickman. . . He has had something to do with me." She further testified that he had sexual intercourse with her on three different occasions, stating places and circumstances. "The first time I went to Lonnie Hickman's house, my sister stayed outside in the path, outside on the step. Lonnie's wife wasn't there. I don't know where she had gone." *Page 807 
It appeared from the testimony of Callie Knox that the defendant was arrested on Monday, May 1. She testified: "The time between the time the act occurred and the time of swearing out the warrant must have been over three weeks cause the little girl told. . . That was on Sunday evening between four and five o'clock, the day before I swore out the warrant. For about twenty days she didn't raise any outcry to me. So far as I know she didn't tell anybody. . . I know where Lonnie Hickman lives. . . His wife lives with him and he has no children. . . Sunday night I found it out and Monday morning I got a switch down and whipped her and I threw the switch down and came up here to the sheriff. That was the same Monday he [the defendant] was put in jail. Lonnie's wife came down to my house that afternoon to talk to me about it." The witness also testified that the sheriff "sent me to a doctor here in Moultrie. I turned the girl over to the doctor and had her examined."
The physician who examined the child testified in part: "In my judgment the girl looks to be eight or ten years old. I would think she is under fourteen."
The defendant made no statement, but introduced several witnesses, who testified that he had a good reputation for truthfulness in the community in which he lived, and that he was never known to have "run around" with women or little girls.
The following excerpts are taken from the testimony of several of the defendant's witnesses:
"I have known Lonnie Hickman eight or ten years. I am one of the teachers in the colored school here." "I have been living in Moultrie since 1917. I have known Lonnie Hickman seven or eight years." "I have known Lonnie Hickman about ten years. I live just a few doors from Lonnie Hickman." "I have lived in Moultrie 23 years. I am a mail carrier and the oldest employee at the post office. I have carried mail in both the white and colored sections of Moultrie. I have been knowing Lonnie Hickman around 18 years." "I work for the State Board of Health for a living. I am a mosquito eradicator. I used to work for the city in the same capacity. I worked with him when I worked for the city for about five years." "I have lived in Moultrie 33 or 34 years and am by profession a shoemaker. I know Lonnie Hickman and have known him for 10 or 12 years." *Page 808 
In the brief of counsel for the plaintiff in error, it was conceded that the evidence was sufficient to prove all allegations of the indictment, except the allegation that the accused and the girl had not become lawfully married to each other. It was insisted that there was no evidence to establish this allegation, and that the verdict of guilty was therefore unauthorized.